McFARLAND, J.

---

[No. 15626.　Department Two.—December 1, 1894.]

## IN THE MATTER OF THE ESTATE OF CATHERINE GARCELON.

CONTEST OF WILL—COMPROMISE WITH DECEDENT—PLEADING—MATTER IN AVOIDANCE OF ANSWER—WAIVER OF EVIDENCE—DISMISSAL OF PETITION.—Where an answer to a petition for the contest of a will sets up a compromise agreement between the decedent and the petitioner, in bar of the petition, and the genuineness and due execution of such agreement is admitted by failure of the petitioner to file an affidavit denying the same, although the petitioner has a right to show in evidence other matters in confession and avoidance of the agreement, without pleading the same, by way of reply, yet, unless he brings to the attention of the trial court his purpose to offer such evidence, the court cannot assume that he desires to prove matter in avoidance, and where a motion is made by the defendants for a dismissal of the petition on account of petitioner's admission of the execution of the compromise agreement, and the motion is opposed only on the grounds that the compromise agreement does not estop the petitioner, and that no trial of the issues of fact tendered by the petition had been had, and that the petitioner had been denied a trial of such issues by jury, it is too late to suggest upon appeal for the first time that he was entitled to make proof of other facts in avoidance of the agreement, or showing his right to contest the will of the deceased.

ID.—AGREEMENT TO RELINQUISH RIGHTS OF HEIR—ESTOPPEL TO CONTEST WILL.—A compromise agreement made between the petitioner and his deceased aunt, upon a contest of the will of an uncle of the petitioner, whereby property of the estate of the uncle bequeathed to the aunt was relinquished to the petitioner by the aunt in consideration of covenants that he would not thereafter, as her heir at law, assert any right to the property derived by her under the will of his uncle, and that he would never in any manner question or dispute any disposition which she might make of that property by deed or will, is a valid and binding contract, and estops the petitioner from maintaining any proceeding to revoke the probate of the will of his deceased aunt.

ID.—TRANSFER OF EXPECTANCY OF HEIR—CONSTRUCTION OF CODE—COMMON LAW—EQUITY.—Sections 700 and 1045 of the Civil Code are intended to state the rule of the common law that a mere possibility, such as the expectancy of an heir, was not regarded as such an existing interest as to be the subject of a sale or capable of passing by assignment, but are not intended to make any change in the rule adopted in courts of equity, that agreements for the sale or release of expectancies, if fairly made, and for an adequate consideration, may be enforced upon the death of the ancestor.

ID.—AFFIRMANCE OF COMMON LAW.—Provisions of the code, so far as they are substantially the same as existing statutes, or the common law, must be construed as continuations thereof, and not as new enactments.

ID.—PRESUMPTION AGAINST CHANGE OF RULES OF LAW.—It is to be presumed that the legislature, in the enactment of statutes, does not intend to overturn long-established principles of law, unless such intention is made clearly to appear either by express declaration or by necessary implication.

ID.—RELEASE FROM HEIR TO ANCESTOR—ESTOPPEL.—An heir may release to the ancestor his expected share in the ancestor's estate, and may thereby estop himself from claiming as heir any portion of the estate of the ancestor which might otherwise in the future vest in him as such heir.

ID.—AGREEMENT NOT TO CONTEST WILL—VALIDITY—CONSTRUCTION.—The agreement of the heir not only to relinquish all expectancy as an heir of his aunt, but also never in any manner, or to any extent, to question, dispute, or contest any disposition by her of the property mentioned in the agreement, either by deed or by last will and testament, is valid, and estops the heir from contesting any will purporting to be duly executed by the aunt, and is not to be construed as applying to such a will as the petitioner may deem valid, or which may be adjudged valid after a contest.

ID.—RIGHT OF EXECUTORS TO INVOKE COVENANT—PRIVITY.—The executors of the will of the deceased aunt are in such privity with the testatrix that they have the right, as against the petitioner, to invoke the benefit of his covenant not to contest her will.

ID.—RELEASE OF FUTURE POSSIBILITY—COVENANT NOT TO CONTEST WILL. Although a mere possibility is not the subject of release at common law, and a covenant not to sue in respect to matters arising out of future contracts is too uncertain to be valid, yet where the subject matter of an existing covenant not to contest a will is in the mind of the contracting parties, and the covenant operates as a release of an expectancy as heir, upon the same principle upon which courts of equity uphold assignments of such expectancies, they will sustain such covenant as a release by the heir apparent of his contingent right to contest the will of his ancestor, and enforce the same when fairly obtained, and for an adequate consideration.

ID.—PUBLIC POLICY—ENFORCEMENT OF CONTRACTS.—The covenant by an heir not to contest the will of the ancestor is not void as against public policy, nor as against the policy of the law that an invalid will should not be established as a valid will; but is in harmony with the paramount public policy that parties shall have liberty to contract, and that their

contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice.

ID.—CONTRACT NOT TO CONTEST WILL—INTEREST OF PRIVATE PARTIES— COMPROMISE.—A contract not to contest a will is one that concerns private parties alone, and is not against public policy; and a valid compromise of a contest of a will, when fairly made, will be enforced.

APPEAL from an order of the Superior Court of Alameda County dismissing a petition for the revocation of the probate of a will.

The appellant is a nephew of Catherine M. Garcelon, deceased, and this appeal is taken from an order of the superior court of Alameda county dismissing his petition, contesting the validity of a document theretofore admitted to probate in that court as the last will and testament of said decedent, and praying that the probate thereof be revoked.

The petition avers that the document so admitted to probate is not the will of said decedent by reason of the fact that she was of unsound mind, and incompetent to make a will at the time she signed it, and upon the further ground that the execution of the same was procured by undue influence exerted upon the decedent by Stephen W. Purrington, one of the residuary legatees named therein, and by other persons unknown to the petitioner; and, in its statement of the facts constituting the alleged undue influence, the petition avers, in substance, that, at the date of the said will, and long prior thereto, Catherine M. Garcelon was "a very aged woman, feeble and weak in body and mind, and mentally incompetent to manage, care for, or dispose of her property, and was unaware of the extent, amount, or nature of her property, or of its value, and was obliged to rely entirely upon other persons for the management of her property and affairs"; and that during all that time the said Purrington and other persons unknown to petitioner were in constant intercourse with her, and exercised an actual authority and dominion over her mind, and said persons, for the purpose of preventing the petitioner, as heir and next of kin, from coming into any portion of

her estate by succession, or under her will, "had, prior to the making of said will, poisoned the mind of said Catherine M. Garcelon against the petitioner, and so induced her to dispose of almost all her property in trust, and to appoint the said Stephen W. Purrington and others as trustees thereof."

Immediately following this statement the petition alleges: "The said Catherine M. Garcelon obtained all of her said property from the estate of her brother, Dr. Samuel Merritt, who died on or about the fourteenth day of August, 1890, and prior to that date she had not been and was not possessed of any property, real or personal, but was dependent upon the said Samuel Merritt for her support and subsistence." The petition then proceeds to state certain alleged false representations which were made to the decedent for the purpose of injuring the petitioner in her estimation, and to cause her to make the will in question, and alleges "that the said Catherine M. Garcelon, being thereby influenced and not otherwise, and not of her own voluntary act or will, made the said purported will." The petition further states that the said Purrington and others, for the purpose of securing a great benefit to themselves, "coerced and caused" the said decedent to subscribe her name to said will, and finally avers that she, at the time the "said purported last will and testament was made, was mentally unable to resist the said dominion and controlling influence of said persons, and was unable to understand the contents of said document, and never did understand or know the same." The petition also alleges that the petitioner and his brother, Frederick A. Merritt, are the nephews and the only next of kin of said Catherine M. Garcelon, and this averment is not denied.

The executor and the administrator with the will annexed answer separately, but both answers are in all respects the same, and deny that the said Catherine M. Garcelon was of unsound mind, or incompetent to make a will, or that the will probated as her last will and testament was executed under undue influence; and in addition to

these denials state the following facts as a separate defense to the matters alleged in the petition: On or about August 17, 1890, one Samuel Merritt, a brother of Catherine M. Garcelon, died, leaving a large estate and a will, by the terms of which the greater part of his estate was given to his said sister, and only a small portion thereof to his nephews, the petitioner here and his brother, Frederick A. Merritt. This will was duly admitted to probate on September 15, 1890. The petitioner and his brother were dissatisfied with its terms, and threatened to contest the probate thereof, and employed a lawyer for that purpose; but a compromise was effected, and said Catherine M. Garcelon and the petitioner and his brother entered into a written contract, by the terms of which the former was to pay to her said two nephews the sum of one hundred and twenty-five thousand dollars, and also to convey certain real property to a trustee upon a certain condition subsequent, the trustee to collect and pay over the income to the nephews, and in consideration of which the latter was to release to their said aunt their claims as heirs of her brother, Samuel Merritt, and for that purpose were to execute to her a proper deed of conveyance of their interest in said estate; and it was further agreed that this deed should " contain such apt words of warranty and covenant as may be prescribed and approved by the counsel of the parties of the first and second parts respectively, to the end of securing to the party of the first part full right and ample power to dispose of all of the property derived by her from the said Samuel Merritt, or by the deed of conveyance and transfer herein provided for; also of all the income to be derived therefrom, and of all the property, real and personal, which the party of the first part now owns or hereafter may acquire, either by deed or last will and testament, without any right, power, or authority of the parties of the second part hereto, or either of them, or their respective heirs or assigns, to question, dispute, or contest the same in any manner, or to any extent whatever." And it

was further provided that said nephews should also execute any other separate agreements and covenants which might be deemed necessary to secure to the said Catherine M. Garcelon the right to dispose of the property mentioned in the deed, either by deed or will, free from any possibility of contest by them.  On the same day the petitioner and his brother executed to the said Catherine M. Garcelon an agreement, which, after referring to the death of Samuel Merritt, and the fact that he had left a large estate and a will by which the great bulk of it was devised and bequeathed to their aunt, and that they were dissatisfied with said will, and had threatened to contest the same, proceeded as follows:

"AND WHEREAS, the undersigned and said Catherine M. Garcelon have mutually agreed upon a settlement and adjustment of their respective property rights and interests in the property and estate of which the said Samuel Merritt was seised or possessed, and in such settlement and adjustment the said Catherine M. Garcelon has made satisfactory provision for the undersigned;

"AND WHEREAS, the said Catherine M. Garcelon has been induced to make such settlement and adjustment, and such provision for the undersigned, in reliance upon their respective promises and agreements that they, nor either of them, would never at any time hereafter, in any manner or to any extent, question, dispute, or contest, as her heirs at law, or otherwise, any disposition which she may have made, or may hereafter make, by deed or will of any or all of the property derived by her from the estate of the said Samuel Merritt;

" Now, therefore, for and in consideration of the premises, the undersigned do hereby promise, covenant, and agree to and with the said Catherine M. Garcelon, her devisees, legatees, and assigns, that they nor either of them, nor their respective heirs, shall or will at any time hereafter assert any right, title, or interest as the heirs or heirs at law of the said Catherine M. Garcelon to the property, real and personal, derived by her under

the said last will and testament of the said Samuel Merritt."

In addition to the foregoing agreement the petitioner and his brother also executed to their aunt a deed purporting to convey and assign to her all their interest in the property of the estate of Samuel Merritt, real, personal, or mixed, or in which they could have an interest as heirs at law of said Merritt. This deed also contained a covenant on their part, whereby they agreed "with the said Catherine M. Garcelon, her heirs, devisees, legatees, executors, administrators, and assigns," not to question or contest any disposition of any of the property belonging to said estate which the said Catherine M. Garcelon "may have made, or may hereafter make, either by deed or by her last will and testament," and that neither of them would ever make any claim to any portion of the property derived by her under the will of Samuel Merritt, except such as he might be able to assert as a devisee or legatee under her last will and testament. The answers further aver that the said Catherine M. Garcelon fully complied with all the terms of the compromise agreement on her part to be kept and performed, and that all of the estate of which she died possessed was derived from her deceased brother, the said Samuel Merritt, and under the terms of his will.

The genuineness and due execution of the several contracts and writings set out in the answer were not denied by the petitioner; but he moved to strike from the answers all the averments relating to the same as irrelevant and immaterial, and also demurred to the separate defense based upon the said alleged contracts. The motion to strike out was denied, and the demurrer overruled.

The petitioner also filed in due time a written request that the issues of fact relating to the competency of the decedent and her freedom from undue influence be tried by a jury. This request was denied, and thereafter the case came on for trial before the court without a jury, and, upon the hearing, the defendants "offered in

evidence" the original contracts and deeds referred to in their answers, and also offered to prove the truth of the recitals therein contained, and that said terms were fully performed by the said Catherine M. Garcelon. The court ruled that none of said evidence was necessary or proper, the genuineness and due execution of said contracts and deeds being admitted, and thereupon the defendants moved to dismiss the petition of the appellant upon the ground that he was estopped by said contracts and deeds from questioning the validity of the will of said Catherine M. Garcelon, and upon the further ground that it appeared that he had no interest in the estate of said decedent. This motion was opposed by the petitioner upon certain specific grounds, which will be hereafter stated. The objections of petitioner were overruled, and the court made an order dismissing the petition upon the grounds stated in the motion of defendants.

*Horace W. Philbrook, Alfred H. Cohen, J. C. Martin, Van R. Paterson,* and *A. A. Moore,* for Appellant.

Any contract between a person and his heirs apparent, so far as they on their side promise that they will not contest his will, is, necessarily *nudum pactum,* lacks consideration, is without mutuality of obligation, and is void. (*Needles' Executor* v. *Needles,* 7 Ohio St. 434. See, also, *Home Ins. Co.* v. *Morse,* 20 Wall. 451; *Lee* v. *Colston,* 5 Mon. 238, 246; *Jackson* v. *Westerfield,* 61 How. Pr. 399; *Chew's Appeal,* 45 Pa. St. 228; Civ. Code, secs. 700, 1045; 3 Pomeroy's Equity Jurisprudence, sec. 1287, note; *Kreamer* v. *Earl,* 91 Cal. 116, 118; 2 Story's Equity Jurisprudence, sec. 1040 *c; Holroyd* v. *Marshall,* 10 H. L. Cas. 211; *McDonald* v. *McDonald,* 5 Jones Eq. 211; *Collyer* v. *Isaacs,* L. R. 19 Ch. Div. 351; Wald's Pollock on Contracts, 302 *n; Curtis* v. *Curtis,* 40 Me. 24; *Fitch* v. *Fitch,* 8 Pick. 479; *Trull* v. *Eastman,* 3 Met. 121. And see notes to same case in 37 Am. Dec. 126; *Chesterfield* v. *Johnson,* 1 Lead. Cas. Eq. 593, 594.) Contract of persons not to be heirs are void as tending to encourage frauds on per-

sons about to die. (Civ. Code, sec. 1272; *Gilbert* v. *Sykes*; 16 East, 156; *Egerton* v. *Earl of Brownlow*, 4 H. L. Cas. 1–250.) Even if a will is valid, a condition that a legacy shall be forfeited if the legatee contest the validity of the will is void if the contest was made in good faith. (*Jackson* v. *Westerfield*, 61 How. Pr. 399; *Chew's Appeal*, 45 Pa. St. 228.) Or if the contest was made on the ground of fraud. (*Lee* v. *Colston*, 5 Mon. 238, 246.) A contract void in law cannot be validated by estoppel. An estoppel cannot be of greater force than a contract. (*Thompson* v. *Doaksum*, 68 Cal. 598; *Houston* v. *Turk*, 7 Yerg. 13; *McCoon* v. *Smith*, 3 Hill, 148; *Pagne* v. *Burnham*, 62 N. Y. 69; *Wilson* v. *Western Land Co.*, 77 N. C. 445; *McKnight* v. *Pittsburgh*, 91 Pa. St. 273; *Langan* v. *Sankey*, 55 Iowa, 52.) Possibility of dower is an interest capable of being released, in this respect differing from the expectancy of an heir apparent. (*Rhodes* v. *Davis*, 51 Mich. 306.) Respondents cannot take advantage of any estoppel because of not being in privity with Mrs. Garcelon. (7 Am. & Eng. Ency. of Law, 4; 1 Bouvier's Law Dictionary, 15th ed., 608; 2 Pomeroy's Equity Jurisprudence, sec. 804.)

*E. Nusbaumer, Warren Olney, H. C. Campbell*, and *John Garber*, for Respondents.

If the appellant is not interested in the estate of deceased, or has estopped himself, he cannot contest the will. (Code Civ. Proc., sec. 1307; *Maurer* v. *Naill*, 5 Md. 324; *Biles* v. *Dean*, 14 South. Rep. 536; *In re Peaslee's Will*, 25 N. Y. Supp. 940; *Matter of Wagner*, 119 N. Y. 29; *Woodruff* v. *Woodruff*, 3 Demarest, 508; *Henry* v. *Henry*, 4 Demarest, 258; *Stack* v. *Stack*, 6 Demarest, 280; *Fiske* v. *Pratt*, 31 N. E. Rep. 715; *In re Noah*, 73 Cal. 586; 88 Cal. 468; *Wickersham* v. *Comerford*, 96 Cal. 438.) Petitioner for a valuable consideration received from Mrs. Garcelon, renounced all claim that he might thereafter have as heir or otherwise to any portion of her estate, and his contract is lawful and binding. (*Crum* v. *Sawyer*, 132 Ill. 462, 463; *Medcalf* v. *Ives*, 1

Atk. 63; *Lockyer* v. *Savage*, 2 Strange, 947; *Power's Appeal*, 63 Pa. St. 443; *Estate of Summerville*, 129 Pa. St. 631; *Brands* v. *De Witt*, 44 N. J. Eq. 545; 6 Am. St. Rep. 909; *Havens* v. *Thompson*, 23 N. J. Eq. 321; 26 N. J. Eq. 383; *Quarles* v. *Quarles*, 4 Mass. 680; *Kenney* v. *Tucker*, 8 Mass. 143; *Fitch* v. *Fitch*, 8 Pick. 479; *Trull* v. *Eastman*, 3 Met. 121; 37 Am. Dec. 126; *Russ* v. *Alpaugh*, 118 Mass. 376; *Daniels* v. *Pratt*, 143 Mass. 216; *Nesmith* v. *Dinsmore*, 17 N. H. 515; *Robertson* v. *Wilson*, 38 N. H. 48; *Kershaw* v. *Kershaw*, 102 Ill. 307; *Simpson* v. *Simpson*, 114 Ill. 603; *Galbraith* v. *McLain*, 84 Ill. 379; *Bishop* v. *Davenport*, 58 Ill. 105; *Smith* v. *Pendell*, 19 Conn. 107; *Dart* v. *Dart*, 7 Conn. 251; *Nicholson* v. *Caress*, 59 Ind. 39; *Roberts* v. *Coleman*, 37 W. Va. 143; *Barham* v. *McKneely*, 89 Ga. 812; *Emerson* v. *Webster*, 53 N. W. 747; *Boynton* v. *Hubbard*, 7 Me. 112; *Curtis* v. *Curtis*, 40 Me. 24; 63 Am. Dec. 651, and notes; *Kinyon* v. *Kinyon*, 25 N. Y. Supp. 225; *Daniel* v. *Lewis*, 13 Ky. 828; *Picket* v. *Dowdall*, 2 Wash. (Va.) 106; *Dikes* v. *Miller*, 24 Tex. 425; *Peacock* v. *Eastland*, L. R. 10 Eq. 21; *Townson* v. *Tickell*, 3 Barn. & Ald. 31; *Begbie* v. *Crook*, 2 Bing. N. C. 69.) The claim of the surviving husband or wife upon the estate of a deceased spouse is one which, from the nature of the marriage relation, appeals to the courts and to society to maintain; yet it has been repeatedly held that either spouse may by contract relinquish his *status* as heir, and his right by virtue of survivorship. (*Crum* v. *Sawyer*, 132 Ill. 444; *Marshall* v. *Beall*, 6 How. 70; *Goodrich* v. *Bryant*, 5 Sneed, 325; *Maurer* v. *Naill*, 5 Md. 324; *Ward* v. *Thompson*, 6 Gill & J. 349; *Charles* v. *Charles*, 8 Gratt. 487; *Hamrico* v. *Laird*, 10 Yerg. 222; *Wynne* v. *Spiers*, 7 Humph. 394; *Laftus* v. *Penn*, 1 Swanst. 445; *Hafer* v. *Hafer*, 33 Kan. 449.) Petitioner, having received the benefit of the contract, will not be permitted to question its validity, as he is estopped from so doing. (*Hathaway* v. *Payne*, 34 N. Y. 109; Herman on Estoppel, 710, 725, 726; *St. Louis etc. R. R. Co.* v. *Foltz*, 52 Fed. Rep. 627; *Kellar* v. *Stanley*, 86 Ky. 244; *Bidwell* v. *Pittsburgh*, 85 Pa. St. 412; *McKnight* v. *Pittsburgh*, 91 Pa. St.

273; *Illinois Cent. R. R. Co.* v. *King*, 69 Miss. 852; *Riggs* v. *Palmer*, 115 N. Y. 506; *Schelenberger* v. *Ransome*, 47 N. W. Rep. 700; *Allen* v. *Berryhill*, 27 Iowa, 537.) The contracts constituted a "family settlement," and should be sustained. (*Robinson* v. *Boyd*, 23 S. W. Rep. 72–78; *Bierer's Appeal*, 92 Pa. St. 265; *Sturgeon* v. *Ely*, 6 Pa. St. 408.) There is little, if any, diversity of opinion upon the general proposition that parties may by contract intercept the line of descent. The rule has long been that dower and kindred rights may be excluded by the contract of the parties. (*McNutt* v. *McNutt*, 19 N. E. Rep. 123; *Rivers* v. *Rivers*, 3 Dessaus. Eq. 195; *Plufger* v. *Pultz*, 43 N. J. Eq. 440; *Bengee* v. *Hiatt*, 82 Ky. 666; *Sutton* v. *Haydon*, 62 Mo. 101; *Young* v. *Young*, 45 N..J. Eq. 27; *Gailmere* v. *Battison*, 1 Vern. 48; *Van Tine* v. *Van Tine*, 15 Atl. Rep. 249; *Van Dyne* v. *Vreeland*, 11 N. J. Eq. 370; *Van Dyne* v. *Vreeland*, 12 N. J. Eq. 143; *Hammersley* v. *De Biel*, 12 Clarke & F. 45; *Brinker* v. *Brinker*, 7 Pa. St. 54; *Roehl* v. *Harmesser*, 114 Ind. 311; *Sclutt* v. *Missionary Soc.*, 41 N. J. Eq. 115; *Bolman* v. *Overall*, 80 Ala. 151; *Hendey* v. *Simpson*, 20 S. W. Rep. 881; *Emory* v. *Darling*, 33 N. E. Rep. 715; *Wright* v. *Wright*, 58 N. W. Rep. 54; *Quinn* v. *Quinn*, 58 N. W. Rep. 808.) Nor is there any thing in our code or statutory law preventing the enforcement of such contracts. Those provisions are but formulations of the existing legal rules, and do not change the general principles of law and equity concerning such contracts. (*Johnston* v. *Spicer*, 107 N. Y. 191, 192, 195; *Remy* v. *Olds*, 34 Pac. Rep. 216; *Hendy* v. *Dinkerhoff*, 57 Cal. 6; *Farmers' Nat. G. Bank* v. *Stover*, 60 Cal. 392; *Estate of Hinckley*, 58 Cal. 459; 2 Austin on Jurisprudence, 118; *Ferrea* v. *Chabot*, 63 Cal. 567.) A covenant not to revoke a will is a lawful covenant. (*Robinson* v. *Ommaney*, 21 Ch. Div. 782.) The doctrine of election is applicable to this case. (*Hoyt* v. *Hoyt*, 42 N. J. Eq. 300; *Cook* v. *Turner*, 15 Mees. & W. 733; *Thompson* v. *Gant*, 14 Lea, 314; *Schley* v. *Collic*, 13 L. R. A. 567; *Hammer* v. *Iowa etc.*, 43 N. W. Rep. 187; 5 Ch. Div. 171; *In re Cummings' Estate*, 25 Atl. Rep. 1125; Teidemann's Equity Jurisprudence, sec.

123; *Moore* v. *Butler,* 2 Schoale & L. 266; *Birmingham* v. *Kerwan,* 2 Schoale & L. 449, 450; *Codrington* v. *Lindsay* L. R. 8 Ch. App. 586; *In re Lord Chesham,* 31 Ch. Div. 472, 473; *Cooper* v. *Cooper,* 7 L. R. Eng. & Ir. App. Cas. 53; *Codrington* v. *Codrington,* 7 L. R. Eng. & Ir. App. 866.) Appellant cannot be heard to contest the will, not having restored the consideration received upon executing his covenant. (*In re Peaslee,* 25 N. Y. Supp. 940.) The contention that the benefit of the covenants descended to appellant would render the covenants simply nugatory. (*Crum* v. *Sawyer,* 132 Ill. 443; *McNutt* v. *McNutt,* 19 N. E. Rep. 124.) The right to waive a right is the highest of all rights. (*Bradford* v. *East,* 21 S. W. Rep. 331.) The parties respondent here, and these whom they represent, are beneficiaries under the contracts, and may insist on their enforcement. (*Riordan* v. *First Presbyterian etc.,* 26 N. Y. Supp. 38; *Dakin* v. *Dakin,* 97 Mich. 289.)

DE HAVEN, J.—1. Notwithstanding the genuineness and due execution of the compromise agreement, as contained in the several instruments set out in the answers, were admitted by the failure of petitioner to file an affidavit denying the same (Code Civ. Proc., sec. 448), he still insists that the court erred in dismissing the petition without giving him an opportunity to show that such agreement was, in fact, without consideration, or that his consent thereto was obtained by fraud, or that it had been extinguished by rescission, or that performance thereof had been waived by the deceased. It is true that, by the terms of section 462 of the Code of Civil Procedure, new matter in an answer is deemed to be controverted without any special replication, and under that section a plaintiff has the right, while not denying the genuineness and due execution of an instrument set out in an answer, to show other matters in confession or avoidance thereof. But unless he brings to the attention of the trial court his purpose to offer such evidence, that court cannot assume that he desires

to make any such defense, and in this case the motion of defendants for a dismissal of the petition was not opposed upon the ground that the petitioner desired to offer any proof tending to show that the contracts and deeds set out in the answers were not freely entered into by the parties thereto, and for an adequate consideration, or that the same were superseded by any subsequent agreement, or that Mrs. Catherine M. Garcelon had ever waived performance of the agreements therein contained. On the contrary, the motion was opposed upon the grounds: 1. That the instruments set out in the answer contained no matter sufficient to estop the petitioner from maintaining this proceeding, or from showing that he has an interest in the estate of Catherine M. Garcelon; and 2. That no trial of the issues of fact tendered by the petition had been had, and that petitioner had been denied a trial of such issues by a jury. The court below, therefore, properly assumed that these were the only grounds upon which the petitioner opposed the motion, and it is too late to suggest here for the first time that he was entitled to make proof of other facts showing his right to contest the will of deceased, and which would have been sufficient to avoid the estoppel which, the trial court held, resulted from the compromise agreement.

2. The main question arising upon this appeal relates to the construction and effect of the compromise agreement set out in the answers. That agreement seems to have been prepared with great care, and there is no ambiguity in any of its provisions. By its terms the appellant and his brother waived their right, as heirs of Dr. Merritt, to contest the will left by him, or to claim any portion of the estate bequeathed and devised by him to their aunt, other than the portion thereof which she gave and relinquished to them by that agreement; and in consideration of the property thus secured to them they further agreed "that they, nor either of them, nor their respective heirs, shall or will at any time hereafter assert any right, title, or interest as heirs or

heirs at law of the said Catherine M. Garcelon to the property, real and personal, derived by her under the said last will and testament of the said Samuel Merritt "; and doubtless, for the purpose of making the foregoing agreement upon their part more effectual, the appellant and his brother, in the deed executed by them for the purpose of carrying out the compromise agreement, and which is to be construed as a part of such agreement, covenanted " to and with the said Catherine M. Garcelon, her heirs, devisees, legatees, executors, administrators, and assigns," that they would not " in any manner, or to any extent, question, dispute, or contest any disposition of the property above mentioned or referred to, or any part thereof, or of any property which may be acquired therefrom or thereby which the said Catherine M. Garcelon may have made, or may hereafter make, by either deed or by her last will and testament."

There is not the slightest contention that the parties to this agreement were not fully competent to contract in relation to their property rights, and the agreement itself recites that it was entered into " after full examination into the facts, and full and deliberate consideration of the premises"; and there is nothing upon its face to suggest that the differences thereby compromised were not settled upon fair and equitable terms, nor was there any offer to prove extrinsic facts for the purpose of impeaching the agreement in this or any other respect. The questions for decision, therefore, are whether such an agreement, based upon a full and adequate consideration, and entered into with deliberation by parties in every way competent to contract, is valid, and, if valid, is the petitioner thereby estopped from maintaining this proceeding to revoke the probate of the alleged will of his aunt. The agreement, as we have seen, in addition to his promise not to contest the will of his uncle, Dr. Merritt, contains two distinct covenants upon the part of the petitioner: 1. That he would not thereafter, as an heir at law of his aunt, Mrs. Garcelon, assert any right

to the property derived by her under the will of his said uncle; and 2. That he would never in any manner question or dispute any disposition which she might make of that property by deed or will. The first of these covenants is, in substance and effect, an agreement upon the part of the petitioner to relinquish as heir presumptive his expectancy in that portion of the estate of his aunt to which the agreement related. It is claimed by the petitioner that such an agreement is void under sections 700 and 1045 of the Civil Code of this state, the first of which provides that "a mere possibility, such as the expectancy of an heir apparent, is not to be deemed an interest of any kind," and the latter section declaring that "a mere possibility, not coupled with an interest, cannot be transferred."

These sections simply state the well-settled and well-understood rule of the common law upon the subject to which they relate. At common law a mere possibility, such as the expectancy of an heir, was not regarded as such an existing interest as to be the subject of a sale or capable of passing by assignment; but in equity the rule was different, and agreements for the sale or release of expectancies, if fairly made and for an adequate consideration, were enforced upon the death of the ancestor; and, in our opinion, it was not the intention of the legislature, in enacting the sections of the code just referred to, to make any change in the rule by which courts of equity were theretofore governed in dealing with this class of contracts. This construction of these sections is in harmony with section 5 of the same code, which declares that the provisions of that code, " so far as they are substantially the same as existing statutes or the common law, must be construed as continuations thereof, and not as new enactments"; and also follows the presumption that the legislature, in the enactment of statutes, does not intend to overturn long-established principles of law unless such intention is made to clearly appear either by express declaration or by necessary implication.

Mr. Story, in section 1040 c, volume 2, of his work on Equity Jurisprudence, states the equitable rule upon the subject of such agreements as the one before us as follows: "So, even the naked possibility or expectancy of an heir to his ancestor's estate may become the subject of a contract of sale or settlement; and, in such a case, if made *bona fide* for a valuable consideration, it will be enforced in equity after the death of the ancestor; not, indeed, as a trust attaching to the estate, but as a right of contract": And see, also, as sustaining the same proposition, Pomeroy's Equity Jurisprudence, 2d ed., secs. 168, 953; *Bacon* v. *Bonham*, 33 N. J. Eq. 614.

In accordance with this principle it has been held in many cases in which the question has arisen that an heir may release to the ancestor his expected share in the ancestor's estate. Thus, in *Havens* v. *Thompson*, 26 N. J. Eq. 383, it was held that a son, by such release to his father, estopped himself from claiming as heir any portion of the father's estate. In that case it appeared that the father gave to the son the sum of six hundred dollars, upon the condition that it should be accepted in full satisfaction of his interest in the father's estate, the son executing a receipt stating that the money was received "in full in lieu of dowry." The chancellor construed the receipt in view of the facts surrounding its execution as a release, and said: "I regard this instrument as an agreement by which Benjamin, in consideration of the money paid to him by his father, agreed with the latter that he would make no claim to a share of his father's estate should the latter die intestate, but therefrom would be debarred by that instrument made upon what was a satisfactory compensating consideration. Such an agreement may be made between a father and his child in regard to the interest of the latter in the estate of the former, and effect will be given to it in equity according to the intention of the parties"; and the rule thus declared was afterwards approved in *Brands* v. *De Witt*, 44 N. J. Eq. 545.

In *Bishop* v. *Davenport*, 58 Ill. 105, it was shown that

the father in his lifetime gave to certain of his children property, and took from them an instrument in writing in which they acknowledged that such property was received by them as their full share of his estate. The father died intestate, and the court, in passing upon the question, held that the transaction was not an advancement, and that the instrument signed by the children operated as a release by them of their expectancies in their father's estate, and should be upheld as such.

So, also, in *Kershaw* v. *Kershaw*, 102 Ill. 307, a son accepted from his father a deed, the deed reciting that "said land is deeded as an advancement to said John W. Kershaw out of the estate of said Joseph Kershaw, and the deed is accepted by said John as his full share of his father's estate." The court in that case held that the acceptance of the deed bound the son to the same extent as if he had signed it, and that the conveyance did not constitute an advancement, but operated as "an executed contract, whereby an heir released his expectancy in his father's estate in consideration of a present grant of real estate." And it was further there decided that the son was estopped from making any further claim as heir at law to any portion of his father's estate.

In *Crum* v. *Sawyer*, 132 Ill. 443, the court, in a well-considered opinion, held that a husband might, for an adequate consideration, enter into a valid contract with his wife, releasing all his interest as her heir in her lands and personal estate, saying: "There can be no question, then, that the complainant's contingent interest or expectancy as the heir of his wife in her real and personal estate was a proper subject of contract, and the contract in question having been made upon a valuable consideration by parties capable of contracting with each other, and, so far as the evidence shows, with entire fairness, it should, as to such contingent interest or expectancy, be enforced according to its terms." And in *Powers' Estate*, 63 Pa. St. 443, it was decided that a father might make a contract with his child which would bar the latter as his heir at law, and that when

property had been received by the son from the father, the son giving a receipt reciting that the same was received in full of his share as heir at law, he was thereby estopped upon the death of the father from claiming any further part of his estate.

Without multiplying authorities upon this point, and many others might be cited to the same effect, it is sufficient to say that we are entirely satisfied with the rule declared in the foregoing cases, and hold that it is competent for an heir under the limitations stated in that rule to relinquish to his ancestor all interest in the estate of the latter which might otherwise in the future vest in him as such heir.

In *Crum* v. *Sawyer*, 132 Ill. 462, it was held that such a relinquishment would inure to the benefit of the other heirs, whether mentioned or not, and in all the cases we have cited the release so made to the ancestor was enforced in behalf of other heirs. In this case, however, it is claimed by the petitioner that the pleadings admit that he and his brother are the only heirs of Mrs. Garcelon, and it is thence argued: 1. That, if in fact she died intestate, her property must, under the statutes of this state, be distributed to them, notwithstanding they may by the compromise agreement have relinquished to her their rights as such heirs; and 2. That the defendants are strangers in no way in privity with that agreement, and, therefore, are not entitled to claim the benefits of its provisions.

In the view we take of this case it is not necessary to determine what force, if any, there might be in the first of these contentions, if Mrs. Garcelon had in fact died intestate, and the question arose upon the distribution of her estate as that of an intestate. It is admitted that Mrs. Garcelon executed apparently in due form of law a document which, upon its face, purports to be her will, and which, if valid, disposed of all her estate consisting of all the property referred to in the compromise agreement of which she died possessed, and this document has been duly admitted to probate as her last will and testa-

ment. So long as this judgment stands it cannot be said that the deceased died intestate, and, unless the petitioner shall succeed in annulling the said judgment of probate, the question as to what would have been his rights as her heir at law if she had died intestate can never arise. The real question is, Does the petitioner have the right to maintain this proceeding in the face of his agreement that he would not contest any will of his aunt? The court below held that he could not, and this was one of the grounds upon which the court based its judgment dismissing the present proceeding.

3. This conclusion of the learned judge of that court was doubtless based upon a consideration of that part of the compromise agreement in which the petitioner covenanted with Mrs. Garcelon, " her heirs, devisees, legatees, executors, and administrators," that he would "never in any manner or to any extent question, dispute, or contest any disposition of the property" mentioned in that agreement " which she may have made, or may hereafter make, by either deed or by her last will and testament." If this covenant is valid, and is sufficiently broad to apply to and include a will, the validity of which is challenged, as is this, upon the grounds of incompetency of the maker, or because of its alleged execution under duress, or undue influence, it is clear that the defendants, as executors of the disputed will, are in such privity with the alleged testator that they have the right, as against the petitioner, to invoke the benefit of this covenant not to contest (*Dakin* v. *Dakin*, 97 Mich. 289), and it would follow that the court below was correct in its ruling upon this point.

This particular covenant was evidently inserted by the parties for the purpose of supplementing the other part of the compromise agreement in which the petitioner relinquished to his aunt his expectancy as her presumptive heir at law, and was intended by him as a complete relinquishment or release of all right to contest, upon such grounds as are set forth in the petition filed in this proceeding, any will apparently executed in due form

and, in fact, signed by his aunt, and which right of contest might otherwise, as a matter of possibility, come to him in the future as such heir at law. To place any other construction upon the agreement would deprive it of all practical meaning and effect. The agreement not to contest was made in view of the fact that, under the law, an heir is given the right to contest the validity of the document actually intended by the ancestor as his last will and testament, some of the grounds upon which such a contest is permitted by the statute often involving doubtful questions of law and fact; the latter, perhaps, depending for their decision upon the conflicting evidence of witnesses, and also upon the verdict of a jury which may be more or less influenced by sympathy or caprice; and the covenant of the petitioner was that he would not bring such questions concerning any will made by his aunt into dispute or litigation. Such being its true construction, we are brought to the consideration of the question, Is such an agreement upon the part of an heir binding upon him? The covenant not to sue for a breach, or for the enforcement of an existing obligation, operates as a release of such obligation; and unless void as against public policy (a point to be hereafter noticed), this covenant not to contest the will of Mrs. Garcelon should be given effect as a release by the petitioner of his right to make such contest. It is true that at common law a mere possibility was not the subject of release, and that a release was held to operate only upon a present interest. (*Pierce* v. *Parker*, 4 Met. 80; *Reed* v. *Tarbell*, 4 Met. 93.) A covenant made by one person not to sue another for or in respect to any matter arising out of future contracts between them, or by reason of any future tort, would, of course, be utterly void, as the parties to such contract could not have in view any particular subject matter, or have any conception of the amount which might be involved in the causes of action upon which the covenant was to operate. But in this case the subject matter of the covenant was in the mind of the con-

tracting parties, and was in its nature no more fleeting and unsubstantial than the assignment of an expectancy, and the same principle upon which courts of equity uphold such assignments will sustain the proposition that a release by a presumptive heir of his contingent right to contest the will of his ancestor may also be enforced when fairly obtained, and based upon an adequate consideration. The two contracts stand upon the same basis; both relate to possibilities, and both concern the same subject matter—the expectancy of the heir—the purpose of the latter agreement being to take away from the heir any right to assert any claim to such expectancy, in the face of a will bequeathing or devising it to another, and both are equally entitled to enforcement.

4. It is argued, however, in behalf of petitioner, that such an agreement is void because against public policy, and in support of this contention the case of *Home Ins. Co.* v. *Morse*, 20 Wall. 451, is cited. In that case it was held that an agreement by an insurance company in its contract of insurance not to litigate in the federal courts any claim arising upon the contract was void; and in *Nute* v. *Hamilton Mutual Ins. Co.*, 6 Gray, 174, a similar question was decided in the same way, and the reasons for such a conclusion were very fully and carefully stated by Chief Justice Shaw in a clear and comprehensive opinion, but there is no analogy between those cases and the one before us, and the reasons upon which the decisions in those cases rest are not at all applicable to a covenant not to contest a will such as we are now considering.

5. The petitioner further contends that it is against the policy of the law that the will of an insane person, or a will executed under the influence of fraud or duress, should be established as a valid will, and that this particular covenant is void, because it attempts to bind the petitioner not to show such facts, and thereby attempts to prevent him from establishing the invalidity of the will in controversy.

In passing upon this question we start with the prop-

osition laid down by Sir G. Jessell, M. R., in his opinion in the case of *The Printing Numerical Registering Co.* v. *Sampson*, 19 L. R. Eq. Cas. 465: "It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void, as being against public policy, because, if there is one thing which more than another public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contract, and that their contracts when entered into freely and voluntarily shall be held sacred, and shall be enforced by courts of justice. Therefore, you have this paramount public policy to consider—that you are not lightly to interfere with this freedom of contract."

The sole object which the parties had in mind in entering into the covenant now under consideration was to secure to Mrs. Garcelon the right to make such disposition of her property as she might desire, free from the contingency that her right so to do, or the fact that in so disposing of it she acted freely or voluntarily, might after her death be disputed by the petitioner or his brother; and, as before stated, the agreement was made in contemplation of the fact that controversies concerning the validity of wills or deeds frequently involve doubtful questions of fact, and that, by reason of false testimony or the weakness of juries, their final decision may not always be in accordance with the actual justice and truth of the case; and we see no reason why persons whose rights of property would be affected by the decision of such questions may not in advance, for an adequate consideration, waive their right to engage in such litigation. Such a contract is one that concerns the parties alone, and does not appear to us to be against public policy. There never has been any doubt that parties actually engaged in contesting a will upon any of the grounds upon which such contests are permitted may compromise all matters in difference arising out of such contest, and allow the disputed will to be established, and such agreements, when

fairly made, are always enforced. It is difficult to under-
stand why such a compromise agreement is any less
against public policy than an agreement made by an heir
apparent or heir presumptive with his ancestors not to
contest a future will of the latter. In addition to this we
think the principle upon which the case of *Cooke* v. *Turner*,
14 Sim. 493, was decided is sufficient to sustain the val-
idity of this covenant, so far as relates to the question
of public policy. The question in that case arose upon
a condition in a will to the effect that, if a devisee should
dispute the will or the competency of the testator to
make it, the devise thereby given to her should be re-
voked. It was argued in that case that such a condition
was void, as against public policy, because having a
tendency to set up the wills of insane persons by restrain-
ing heirs named therein as devisees from contesting
such wills; but the court, in answer to this argument,
said: "There appears to be no more reason why a per-
son may not be restrained by a condition from disputing
sanity than from disputing any other doubtful question,
whether of fact or of law, on which the title to a devise
or grant may depend." And the court then, after call-
ing attention to certain conditions which, if found in
a will, would be declared void as against public policy,
such as conditions in restraint of marriage or of lawful
trade, proceeded to say: "But, in the case of a condition
such as that before us, the state has no interest whatever,
apart from the interest of the parties themselves. There
is no duty, either perfect or imperfect, on the part of an
heir to contest his ancestor's sanity. It matters not to
the state whether the land is enjoyed by the heir or by
the devisee; and we conceive, therefore, that the law
leaves parties to make just what contracts and engage-
ments they may think expedient as to raising or not
raising questions of law or of fact among themselves,
the sole object of which is to give the enjoyment of the
property to one claimant rather than to another." This
reasoning is applicable to the case at bar, for it must be
admitted that that which is valid by way of condition,

whether in a will or deed, would also be valid as a covenant contained in a contract.   See, also, as sustaining the decision in *Cooke* v. *Turner*, 14 Sim. 493, *Bradford* v. *Bradford*, 19 Ohio St. 546; 2 Jarman on Wills, *902; 2 Redfield on Wills, 679.

We have given to the earnest and able argument of the attorneys for the petitioner careful consideration, and, while we have not noticed in detail all the points urged by them in support of this appeal, the views above set forth are really conclusive of every question discussed by them.

Our conclusion upon the whole case is that the compromise agreement is valid, and that the petitioner is thereby estopped from maintaining this proceeding; and it follows therefrom that the superior court did not err in refusing petitioner's demand for a trial of the issues relating to the sanity of the testator or her freedom from undue influence.   If the petitioner was not entitled to litigate these matters the orderly course of procedure required that the court should dismiss his petition, as it did.

The respondents have moved to dismiss the appeal, but, in view of our conclusion upon the merits, it is not necessary to discuss the grounds of such motion.   We think the motion should be denied.

Motion to dismiss appeal denied, and judgment affirmed.

FITZGERALD, J., and McFARLAND, J., concurred.

Hearing in Bank denied.