## In re CHARLES NELSON CO.

(District Court, N. D. California, Third Division. January 3, 1924.)

No. 17769.

Shipping ⚙⟳207—Action at law for injuries may not be stayed by proceedings for limitation of liability.

A suit cannot be maintained for limitation of liability in an action at law by a seaman for injuries, brought under Merchant Marine Act June 5, 1920, § 33 (Comp. St. Ann. Supp. 1923, § 8337a), the effect of which would be, not only to limit recovery to the value of the ship and earned freight, but to defeat the remedy given by the act, by staying the action at law and compelling a transfer of the suit to the court of admiralty.

In Admiralty. In the matter of the petition of the Charles Nelson Company for limitation of liability. On motion of Thomas S. Curtis to vacate order of stay. Granted.

Farnham P. Griffith and McCutchen, Olney, Mannon & Greene, all of San Francisco, Cal., for petitioner.

Halsey L. Rixford, of San Francisco, Cal., for respondent Curtis.

PARTRIDGE, District Judge. Thomas S. Curtis commenced an action on the law side of this court, seeking damages for personal injuries incurred while acting as a seaman on the barkentine Mary Winkleman. His suit amounted to an election to proceed at law under section 33 of the Merchant Marine Act of 1920 (Comp. St. Ann. Supp. 1923, § 8337a), rather than to pursue his remedy at admiralty. Subsequently the Charles Nelson Company filed this proceeding for limitation of liability. Monition issued in due form, with the order provided for by rule 54 of the Supreme Court in admiralty, directing that all proceedings, including the suit of Curtis, be stayed. Upon reference to the commissioner, a finding was made that the value of the ship is $1,500, with no freight pending. Curtis' action is for $22,000. Curtis, therefore, has moved to vacate the order staying his action, and thus has squarely presented the proposition as to whether or not an action at law by a seaman under section 33 is within the limited liability law. Revised Statutes, § 4283 et seq. (Comp. St. § 8021 et seq.). Was it the intention of Congress, as expressed in the statutes, to take one further step in the progression, namely: (1) To abrogate the time-honored doctrine of the law of the sea, that an injured sailor was entitled only to wages, maintenance, and cure, and to substitute therefor the right to such a sum of money as might reasonably compensate him for his injuries; (2) to give him the right to go into common law, with a trial by jury, who should be the judges as to whether or not he was entitled to anything, and, if so, how much, instead of restricting

⚙⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

him to admiralty, where the judge alone determines these questions; and (3) to make the amount of his recovery dependent alone upon the extent of his injuries, irrespective of the value of the ship and earned freight?

As to the first two steps, the statutes have left little, if any, doubt—certainly none, if the statutes are constitutional, as I believe they are. As to the third, however, the question is difficult. It is now before the Supreme Court, in a matter to be heard at the present term, and will, of course, be there authoritatively determined. But meanwhile Curtis is entitled to have his case determined.

Congress did not see fit, in enacting section 33, to specifically provide that the Limited Liability Act should not apply to actions for injuries to seamen. The question, therefore, is left to interpretation. As bearing upon the policy of the matter, as a guide to interpretation, it is said, on the one hand, that limitation of the liability of the owner of a ship to the vessel and earned freight is ancient in our legislation, and still more ancient in the law of nations, which forms the basis of admiralty procedure. In the United States, the first statutes were enacted in 1851. But the practice was recognized here long prior to that time. The Rebecca v. America, Fed. Cas. No. 11,619, decided in 1831. But, as pointed out in that case, and explained in Norwich Co. v. Wright, 13 Wall. 104, 20 L. Ed. 585, the doctrine had its origin in the Middle Ages. It is urged, then, that the well-established presumption against repeals by implication applies with double force where the statute is of ancient usage. In re Garcelon, 104 Cal. 570, 38 Pac. 414, 32 L. R. A. 595, 43 Am. St. Rep. 134.

Further, it is urged that the Limited Liability Act, which is entitled "An act to remove certain burdens on the American merchant marine" (23 Stat. 53) is of the utmost importance to our sea-borne commerce. This is no doubt true. It is unquestionably sound legislation, and based upon the fundamental economic consideration that the investment of capital is encouraged, wherever the investor can be certain that in any event his loss will not exceed the amount he has invested. As was pointed out by the Supreme Court in Moore v. American Transportation Co., 24 How. 1, 16 L. Ed. 674:

"The act was designed to promote the building of ships, and to encourage persons engaged in the business of navigation, and to place that of this country upon a footing with England and on the continent of Europe."

Later, in Providence & New York S. S. Co. v. Hill, 109 U. S. 578, 3 Sup. Ct. 379, 617, 27 L. Ed. 1038, the Supreme Court says that its "value and importance * * * to our maritime commerce can hardly be estimated." In the same case, moreover the Supreme Court utters a warning against administering the statute with "a tight and grudging hand." The language in this respect is quoted with approval in the recent case of Deslions v. La Compagnie Generale Transatlantique, 210 U. S. 95, 28 Sup. Ct. 664, 52 L. Ed. 973.

These considerations must appeal with the utmost cogency to any one who realizes the extent to which our future depends upon the development of our merchant marine. But, on the other hand, it may pertinently be asked, "What's the ship without the men?" Is it too

much to hope that it will be possible to build up a body of vigorous, rugged, intelligent seamen, in such numbers that American ships can at all times confidently rely upon the best of American crews? Is it not apparent that the very existence of such a corps will be the very highest stimulus to the production and maintenance of American bottoms? But how can we expect such a corps, if the American sailor is in a position materially more disadvantageous than that of other American workmen? It is no answer, either, to say that there are already many such, for the very reason that their condition has been greatly ameliorated by humane legislation, but for the additional reason that the numbers of such men should be vastly greater than they are.

It has become a truism that seamen are the wards of admiralty—to be jealously guarded from oppression or wrong. This is all right enough; but it does not, and should not, accord with the dignity of a noble profession, in that the American seaman, who is to maintain and enlarge our prestige on the sea, should not and must not have any need of wardship. His status should be and must be defined with precision, so that his calling will be invested with the dignity which it deserves. To that end has pointed the whole trend of modern legislation; and it seems to me that the courts should have it constantly in mind, so as to further, and not retard, all progress toward that end.

Nor is it difficult to find recognition of this in the course and history of legislation with regard to seamen, as well as the general trend of judicial interpretation. If it has lagged behind legislation looking to the betterment of the condition of other American workmen, it is only because it has had a greater ways to go, and a heavier load to carry. In fact, the distance between the condition of the seaman of half a century ago and his status to-day is far greater than the progress which has been made with regard to other workmen—not because the progress has been further forward, but because it started much further back. Section 33 of the Merchant Marine Act of 1920 (Comp. St. Ann. Supp. 1923, § 8337a) reads as follows:

"Sec. 33. That section 20 of such Act of March 4, 1915, be, and is, amended to read as follows:

" 'Sec. 20. That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common law right or remedy in cases of personal injury to railway employees shall apply,' " etc.

There are no words here of positive or express repeal of the limited liability statutes; but the rule that repeals by implication are not favored has no application, where a right or remedy is created inconsistent with a previous statute. Under the law as it stood at the time of the enactment of section 33, if an action was brought by an injured seaman, he could not "maintain" it, if the owner of the vessel saw fit to proceed to limit his liability. By the very provisions of the admiralty rule, the court must issue an order forbidding him to maintain it. What, then, is the result of a statute giving him the right to "maintain" an action at common law? "Maintain," in this sense, means "to continue or persevere in or with; to carry on." Webster's International Dictionary. But clearly he could not "persevere with" or

"carry on" his action, if he could be stopped by limitation proceedings. Moreover, the statute gives him an "election." The limitation of liability statute, on the other hand, gives the election to the owner.

The effect of section 33, therefore, is to create a new right, absolutely inconsistent with the owner's right to elect to surrender his vessel, and thus limit his liability to her value and earned freight. Otherwise it is this reductio ad absurdum: The sailor may "elect" to maintain his action at law, unless the owner "elects" to surrender his ship.

The same result is obtained by approaching the problem from the opposite direction:

1. Limited liability proceedings are of such a character that they merge in themselves all suits and claims. As was said in Metropolitan Redwood Co. v. Doe, 223 U. S. 365, 32 Sup. Ct. 275, 56 L. Ed. 473, Ann. Cas. 1913D, 1221:

"The very nature of the proceeding is such that it must be exclusive of any separate suit against an owner on account of the ship. The monition which issues when the vessel has been surrendered, and a stipulation entered into to pay the value into court, requires every person to assert his claim in that case."

2. The limitation of liability proceeding is, of course, strictly in admiralty.

3. The effect of the proceeding, before the enactment of section 33, was to compel every one, including an injured sailor, to come into that proceeding in admiralty, and there assert his claim.

4. The effect would be that the injured seaman would not have an "election" to "maintain" his claim before a jury.

5. It seems to follow inevitably that Congress, in using the words "election" and "maintain," must have intended to give the injured seaman a right to recover his damages against the owner in any event, and not to leave him to take his chances with other creditors in the proceeds or value of the ship.

Nor is there anything novel or unusual in a statute which gives a preference of this kind to those who work for wages. It has its basis in the logic of necessity, and the humane recognition of the fact that quite generally the workman's wages, or indemnity in the event of his injury or death by accident, are necessary to the support of his family. For example, most, if not all, of the states exempt at least a portion of his wages from execution for other debts than those incurred for necessities. In the event of the bankruptcy of the employer, or an assignment for the benefit of creditors, a preference is given to the wages of employees. The same preference prevails as to the seaman's wages, in admiralty. Workmen's Compensation Laws have proved so beneficent, both to employer and employee, that scarcely a voice, any more, is raised against them. Illustrations might be multiplied indefinitely. But these are enough to suggest that Congress must have intended, in accordance with the whole trend of modern economic and sociological legislation, to put the case of an injured seaman in a different category from other claims.

I believe that was the clear intent of Congress, and the motion to vacate the stay must be granted. It is so ordered, and the case at law will be placed on the calendar for January 22d.