[L. A. No. 5827. Department One.—December 11, 1918.]

## In the Matter of the Estate of JAMES HARVEY SLOAN, Deceased.

HUSBAND AND WIFE—SETTLEMENT OF PROPERTY RIGHTS—VALID AGREEMENT.—An agreement between a husband and wife settling their rights as to the community property is authorized by section 158 of the Civil Code.

ID.—RELINQUISHMENT OF CLAIM IN ESTATE—BAR OF RIGHT AS WIDOW. A provision in such an agreement that each party releases and relinquishes to the other all claims in the estate of the other upon the death of either operates as a bar to any claim by the wife upon the death of the husband to any property of his estate accorded by section 1465 of the Code of Civil Procedure, as widow of the deceased.

ID.—CONTEMPORANEOUS AGREEMENT—PROCURING OF DIVORCE—PROPERTY AGREEMENT VALID.—An agreement between a husband and wife settling their property rights is not void because of the contemporaneous execution of another agreement disconnected and separable from the former relating to the bringing of an action for divorce.

ID.—RESCISSION OF AGREEMENT—FRAUD—RESTORATION OF PROPERTY.—Where a wife seeks to rescind an agreement settling property rights on the ground of fraud, she must restore, or offer to restore, the property received by her under the agreement.

APPEAL from a judgment of the Superior Court of Los Angeles County. James C. Rives, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ray L. Chesebro and Edward Winterer, for Appellant.

William H. Fuller, for Respondents.

VICTOR E. SHAW, J., *pro tem.*—This is an appeal from a judgment of dismissal entered against petitioner, Dola Arvilla Sloan, upon the sustaining of a demurrer to her second amended petition, filed under section 1465 of the Code of Civil Procedure, without leave to amend.

It appears from the petition that petitioner and James Harvey Sloan were married on the 15th of January, 1894, and lived together as husband and wife until March 16, 1916, on which date he left the family residence and thereafter, without her consent, continued to live separate and apart from her; that on July 25, 1916, the parties entered into an agreement, which, after reciting the fact that they were husband and wife and desirous of settling their rights as to property, all of which, it was declared, was community estate, provided that Dola Sloan should have as her sole and separate property certain described real estate, including the family residence, valued at six thousand dollars, upon which she, on October 5, 1915, had filed a declaration of homestead, together with the furniture and furnishings therein, also all moneys then in her possession and that due to her. As to the husband, it was agreed that he should, as his sole and separate property, retain all moneys then in his possession, and that due him, and also "all stocks, bonds and other securities which he now owns or which he may hereafter acquire," together with his professional library then in possession of the wife and which she agreed to surrender to him on demand therefor; also, all the office furniture, effects, fixtures, and certain described dental appliances. The agreement further provided that "all property hereafter acquired and all earnings which may be made or acquired by the parties hereto shall be his or her sole and separate property, respectively, free from all claim of the other party; that each of the parties hereto shall have the right to dispose of his or her property, both real and personal, that may be hereafter acquired by either of them, as fully and effectually as if the parties hereto were not married and had never been married, and that each party hereby releases and relinquishes to the

other party, and to his or her heirs, assigns and legal representatives, all claims, demands and interests against or in the estate of the other upon the death of either.

"Ninth: That the parties hereto, and each of them, do hereby waive and relinquish and surrender any and all claims and rights to inherit from the other in case one or both of the parties hereto shall die intestate, which claim and right and all of them said parties and each of them, respectively, do hereby and do now forever relinquish and surrender in favor of all of the heirs of such party so dying and to the exclusion of either and each of the said first or second parties hereto, respectively.

"Tenth: That the parties hereto do and have hereby settled and forever adjusted by and between themselves all present and future property rights of every kind and nature, whether community or separate property, wheresoever the same is or may be located, and all other rights and claims which either may have or claim to have against the other so far as their property rights are concerned, and in addition thereto the said parties hereto do hereby settle and adjust, and have settled and adjusted, and forever determined all their respective rights to, of and in any inheritances the one from the other, respectively."

On the same date there was delivered to the wife and recorded at her request a grant deed, from the husband, conveying to her the property on which she had declared a homestead, the other parcels of the estate having been theretofore conveyed to her. On the same date, to wit, July 25, 1916, another instrument in writing was executed by the parties, whereby after reciting that differences had arisen between them, "by reason of which it may become necessary that the marriage . . . be dissolved by proper legal proceedings . . . and in order that there may be no controversy between the parties at the time of said event, if it does occur, in reference to alimony and attorney's fees," it was agreed that commencing with August 1st, following, the husband should pay to the wife forty dollars per month up to April 1, 1917, which payments at said time should cease, except in the event the wife instituted an action for divorce, in which case in addition to $125 to be paid by the husband for attorney's fees and costs, said payments of forty dollars per month should continue to be paid to the wife for her support, and in lieu

of alimony; providing that if she obtained an interlocutory decree by October 1, 1917, the payments should continue for one year thereafter, at the expiration of which time they should cease and the husband be released from further obligation for maintenance and support of the wife. It was further agreed that the wife should not interfere with the business of the husband, and that if he failed to make the payments as agreed, she might terminate the agreement, and further agreed that no action for divorce brought by the wife should be based on the grounds of adultery of the husband. On November 1, 1916, the husband died, leaving a will which was admitted to probate and letters testamentary issued to Chas. E. Putnam as executor.

Appellant's chief contention is that exhibit "B," by which the parties declared that all property owned by them was community estate, which under an executed agreement (Civ. Code, sec. 1661) was divided, the husband conveying to the wife as her sole and separate estate, real property of an admitted value of upward of six thousand dollars, the title to which stood in his name, is void on its face. Considered alone there is no merit in this contention. The contract is clearly one authorized by section 158 of the Civil Code. (*Yoakam* v. *Kingery,* 126 Cal. 30, [58 Pac. 324].) It was made by parties capable of contracting and upon a sufficient consideration. Conceding at the time of the husband's death appellant was, in the absence of an agreement for a separation as was the case in *Estate of Miller,* 158 Cal. 420, [111 Pac. 255], and *Estate of Yoell,* 164 Cal. 540, [129 Pac. 999], and, therefore, as his widow, entitled to the rights and property accorded by section 1465 of the Code of Civil Procedure, nevertheless, by the terms of the agreement, petitioner in express terms and in language that is most apt for the purpose relinquished all claim and right to his property and estate, thus barring herself from the claims made, just as effectually as such an agreement would bar her right as widow, to administer upon the estate of her deceased husband. (*Estate of Walker,* 169 Cal. 400, [146 Pac. 868].) The subject of the agreement was all the community property of the parties. This, though not specifically mentioned other than as securities (*Thayer* v. *Wathen,* 17 Tex. Civ. App. 382, [44 S. W. 906, 35 Cyc. 1283]), "which he now owns or may acquire," included the insurance policies upon the life of the

husband, in which petitioner had no vested interest, and hence, presumably, the assured had the right to substitute for her the name of some other beneficiary.

Petitioner insists, however, that conceding the agreement, when considered alone, is valid, and constitutes a relinquishment of her asserted rights, nevertheless it must be read and interpreted in connection with exhibit "C" as a part thereof. That the two documents made at the same time must, under section 1642 of the Civil Code, be deemed one instrument, and thus considered it is void on its face for the reason that it violated good morals, as it shows the design and purpose thereof was to facilitate the procuring of a divorce. (*Newman* v. *Freitas,* 129 Cal. 283, [50 L. R. A. 548, 61 Pac. 907].) We are not impressed with counsel's argument upon this point. Conceding the agreement designated exhibit "C" to be void for the reason that it was calculated to induce or facilitate the bringing of an action for divorce as claimed by appellant, it relates to a different subject and is entirely distinct, disconnected, and separable from the valid agreement designated as exhibit "B." Moreover, since it imposed no obligation upon the wife to sue for a divorce, it cannot be deemed a consideration for the execution of exhibit "B." No possible cause of action in favor of the husband could have grown out of the wife's failure for any length of time, nor for any cause, to sue him for divorce, nor in case of such suit could the agreement (exhibit "C") control the action of the court in the exercise of its discretion, in allowing her alimony or attorney's fees. No act of omission or commission on the part of either party in violation of the provisions of exhibit "C" could affect the acts had and taken under the terms of exhibit "B."

It is next claimed that, assuming the contract on its face to be valid, it is shown to be void by reason of extrinsic matters alleged in the complaint. This contention is based upon a number of grounds, among which it is claimed the purpose thereof was to facilitate a divorce between parties and hence, founded upon an immoral consideration; that it was procured by fraud, consisting in the alleged fact that deceased represented that unless she entered into the agreements he would abandon her forever without support; that he promised that her name as beneficiary in certain certificates of membership in the Bankers Life Association would not be changed, so

that upon his death the proceeds thereof would be paid to her; that a will theretofore made by him in her favor should not be revoked, and that she signed the instruments as the result of coercion and undue influence practiced upon her by deceased. As to all these and other like allegations, in so far as they are sufficient to constitute fraud upon whatsoever grounds based, a sufficient answer thereto, since we hold the contract valid, is that while petitioner sought a rescission of the agreement under which the community of the couple was divided, and real property of six thousand dollars in value actually conveyed to her as her sole and separate estate, she neither restored nor offered to restore the same, which by section 1691 of the Civil Code is made a condition precedent to the maintenance of an action to rescind.

The judgment and order are affirmed.

Richards, J., *pro tem.*, and Sloss, J., concurred.