[Civ. No. 2709.   First Appellate District, Division Two.—April 3, 1919.]

DELIA MILEKOVICH, Respondent, v. PATRICK P. QUINN et al., Appellants.

[1] DIVORCE—DIVISION OF COMMUNITY PROPERTY—DUTY OF COURT.—If the parties to a divorce proceeding have not agreed to a division of the community property, it is the duty of the court in which the divorce proceeding is pending to determine the relative interests of the spouses in their common accumulation.

[2] ID.—STIPULATION OF PARTIES—FRAUDULENT CONCEALMENT OF PROPERTY—SUBSEQUENT ACTION TO SECURE PROPERTY—DUTY OF PLAINTIFF—EQUITY.—Where the husband in entering into a stipulation with reference to the division of the community property fraudulently keeps from the wife knowledge of the existence of certain community property, in a subsequent action by the wife to secure a division of such property, it is not necessary for her to offer to return to the defendant the property received by her under the original settlement; nor is it necessary in such action that the decree in the previous action of divorce be set aside, either in whole or in part.

[3] ID.—UNTRUE STATEMENTS OF HUSBAND—MANNER OF MAKING IMMATERIAL.—The fact that the only untrue statements made by the husband were contained in his pleading and in his affidavit filed in the wife's suit for divorce is immaterial where the wife was deceived thereby and was induced by such false statements to enter into the stipulation covering the division of the community property.

[4] ID.—STIPULATION — JUDGMENT — ISSUES WITHDRAWN.—Where the stipulation with reference to the division of the community property expressly provided that the property rights of the parties as therein set forth should be incorporated in the judgment, and the judgment expressly incorporated them, these matters were as effectually withdrawn from any judicial consideration as if they had been expressly withdrawn by stipulation.

[5] ID.—FAILURE TO CROSS-EXAMINE—LACK OF DILIGENCE—SUBSEQUENT SUIT.—Where, due to the fraudulent misrepresentations of the defendant in his pleading in the divorce action and to his having thereby secured from plaintiff a stipulation covering the settlement of their property interests, the plaintiff fails to cross-examine the defendant as to the community property, she is not thereby guilty of such negligence or lack of diligence as to bar her in a subsequent action from securing her proper share of the former community property.

APPEAL from a judgment of the City and County of San Francisco. Thos. F. Graham, Judge. Affirmed.

The facts are stated in the opinion of the court.

John L. McNab, Timothy Healy and Byron Coleman for Appellants.

Frank W. Sawyer for Respondent.

LANGDON, P. J.—Plaintiff and respondent in her suit sought to be relieved of that portion of a prior decree of divorce by which the property rights of the parties to the

divorce suit are claimed by the appellants to have been finally adjudicated. The essential facts are admitted. In the interim between the divorce decree and the commencement of this action the plaintiff had remarried. When the divorce action was brought, a restraining order was made on the *ex parte* application of the plaintiff prohibiting the defendant in the divorce action, Patrick P. Quinn, from disposing of any portion of the community property. On the following day, Quinn, upon an *ex parte* application, caused the restraining order to be set aside. Immediately thereafter he withdrew from his safe deposit box bonds of the par value of forty-five thousand dollars and delivered them to one Brady for the purpose of secreting them from the knowledge of Mrs. Quinn, her attorneys, and the court in which the divorce action was pending.

In her complaint for divorce the plaintiff made allegations concerning the community property and among other things, upon information and belief, that the defendant had securities of the value of sixty thousand dollars, a part of the community property. In his answer, the defendant denied all the substantial allegations of the complaint and denied that he had securities of the value of sixty thousand dollars, or of any sum or amount in excess of about two thousand dollars, admitting, however, the ownership of other community property, to which further reference will be made. In the cross-complaint the defendant set up a cause of action against the plaintiff for divorce on the ground of willful desertion, and a second cause of action based upon alleged cruelty of the plaintiff. Upon receiving notice of the application for alimony during the pendency of the suit, Quinn made an affidavit expressly referring to the statements set forth in his answer and cross-complaint in regard to the community property and closing with the statement: ''In relation to said assertions about defendant's great wealth, defendant says that at the time of the great fire in San Francisco, he had the home above mentioned; that the other lot of the community was unimproved, and that he had less than three thousand dollars in cash. Since that time he has earned the money necessary to erect the said flats amounting to twenty thousand dollars and has paid for all of the street work in connection therewith, amounting to five thousand dollars, and to buy the Stevenson Street property for three thousand five hundred dollars, mak-

ing a total accumulation made by the defendant in that time
of thirty-two thousand seven hundred dollars, which defend-
ant submits is all that he could be expected to accumulate
in that short space of time in consideration of his age and
bodily condition." About the time the answer was filed and
the affidavit served on plaintiff negotiations were opened for
the settlement of the property interests of the parties to the
divorce suit. It does not appear whether negotiations were
pending when the answer was filed or whether they were
opened shortly after. The negotiations were carried on be-
tween the attorneys of the respective parties and extended
over a period of from one to two months. During the negotia-
tions, some five or six offers of settlement of the property
interests were made on behalf of Quinn, and they were suc-
cessively rejected by Mrs. Quinn. On the trial of this case
the rule excluding evidence of confidential communications
between attorneys and clients was rigidly applied to the evi-
dence of the attorneys of both parties. It appears, however,
that no direct representation was made either by Quinn or by
his attorney to Mrs. Quinn or anyone in interest with her
in regard to the amount of community property, unless the
representations made in the answer and cross-complaint and
in the affidavit served upon Mrs. Quinn or her attorneys can
be so construed. The only statement ascribed to the attorney
for Quinn during the negotiations was, "Your client says one
thing and my client says another." Whereupon, the attor-
neys for both parties continued to deal in view of the com-
munity property known by the attorneys for the plaintiff to
exist. Despite the fact that Mrs. Quinn repeatedly told her
attorneys that she believed Quinn had some sixty thousand
dollars' worth of securities, Quinn's deposition was not taken,
nor was any direct inquiry made of him, nor, so far as the
record shows, of his attorneys in regard to the discrepancy
between the belief of Mrs. Quinn and the statements of Quinn
in his answer and cross-complaint. After rejecting many
offers of settlement, the plaintiff entered into a stipulation
which is attacked in the present suit. The property agree-
ment embodied in the stipulation was made upon the as-
sumption that under it each of the parties should receive
one-half of the community property. The stipulation was
for a division of all the community property. It provided
that a certain lot was the property of Nellie Riley, a married

daughter of the parties; that plaintiff Delia Quinn, now Delia Milekovich, should receive a lot in San Francisco, 60 by 120 feet, improved by a building containing six flats, and another lot 25 by 95 feet, together with the family dwelling-house thereon and its contents, except personal belongings of the husband; that "all of the remainder of the community property of said community shall be awarded to and be the sole and separate property of the defendant, Patrick P. Quinn, including the following described real property"; after which followed a description of a lot 75 by 95 feet, another lot 27 feet 6 inches by 85 feet, a lot in San Leandro, in Alameda County, "and also all personal property of every kind and description of said community other than the contents of said Ninth Avenue dwelling-house."

It is further stipulated that "the foregoing division of the community property is in absolute, entire, and complete satisfaction and discharge of all claims which either party to said action might assert against the other whether on account of property rights, interest in community property, or rights to maintenance, alimony, costs, and counsel fees." In consideration of the "foregoing statements and compromise," the parties mutually released each other from all claims and demands and bound themselves to execute such conveyances as might be proper to effectuate the settlement. The stipulation closes as follows: "It is furthermore stipulated and agreed that in case the above-entitled court shall make and enter any decree in the above-entitled action awarding a divorce to the plaintiff or to the defendant in said action that the said court shall find that all of the property hereinbefore referred to is community property of plaintiff and defendant and shall divide the same between them in accordance with the terms of this stipulation."

The interlocutory decree, after adjudicating the divorce, adjudicated and decreed that the real property of the community belonged to and should vest in the respective parties, following the provisions of, but not referring to, the stipulation, and the decree contained the following statement: "It is further ordered, adjudged, and decreed that the foregoing division of the community property is an absolute, entire, and complete satisfaction and discharge of all claims which either party to said action might assert against the other whether on account of property rights, interest in com-

munity property or right to maintenance, alimony, costs and counsel fees." The deeds to the real property were executed in accordance with the terms of the stipulation and decree. Shortly after discovering the fraud practiced upon her by Quinn, plaintiff commenced the present action. The other parties alleged to have been custodians of a portion of the bonds or their proceeds were joined as parties to the suit. In the complaint the history of the divorce action is set forth at considerable length and it is alleged that in reliance upon the statements made in the answer and cross-complaint, and in the affidavit of Quinn, the property settlement was made; that the statements were untrue and the settlement would not have been made but for the statements. As stated before, the essential facts are admitted either directly in the pleadings of the defendants or by statements of the defendant Quinn on the witness-stand. In the complaint it is not in terms stated that the plaintiff desires to subject herself to any order which might be made in a court of equity, nor that she desires to do equity. There is no allegation, nor was there any evidence of rescission or attempted rescission. The plaintiff prayed judgment "canceling, annulling, and setting aside" the agreement in the divorce action, the deeds from the plaintiff to Quinn, from the plaintiff and Quinn to Mrs. Riley, from Quinn to the plaintiff, and the interlocutory decree "so far as it affects the property"; that it be further adjudged and decreed that certain real property is the separate property of the plaintiff and that all other property described in the complaint and "now standing in the name of the defendant, Patrick P. Quinn, as well as that standing in the name of defendant, Nellie E. Riley, is community property," and that Nellie E. Riley and Quinn be declared trustees of a trust in which the interest of the plaintiff should be determined; that the defendant should be required fully to account and the court decree the plaintiff to be the owner of one-half of the property in the possession or under the control of Quinn or Mrs. Riley; that the exact value of the property "wrongfully and fraudulently concealed" be determined as of the time of the settlement of the property rights in the divorce action and the plaintiff decreed to be entitled to one-half thereof, and for general relief.

The findings and decree were very lengthy and determined that the plaintiff is entitled to twenty-two thousand five hun-

dred dollars, the value of one-half of the bonds and securities, with legal interest from the date of the interlocutory decree; that the recitals in the decree that the remainder of the community property should be awarded to Quinn and that the division was in absolute, entire, and complete satisfaction were made by reason of a settlement made out of court and obtained by Quinn from the plaintiff through fraud, by which the plaintiff was prevented from presenting to the court and obtaining a judicial investigation of the true facts; that the stipulation be annulled; that the plaintiff in addition to the recovery of twenty-two thousand five hundred dollars be given a lien upon all of the personal and real property owned and possessed by the defendant Quinn; that Quinn and Fred J. Riley are involuntary trustees for the plaintiff of the real and personal property described in the decree as belonging to Quinn; that the plaintiff is the owner of the lot containing the six flats; that the plaintiff has no right in the property standing in the name of Mrs. Riley; that Quinn is the owner of the lots he took under the stipulation, charged with the trust for the payment of the twenty-two thousand five hundred dollars; that the defendant is the owner of a certain lot to which the plaintiff has no right. The decree further appointed a commissioner to take possession of and sell the property, subject to the trust.

The appellant maintains that many of the findings are not supported by the evidence and calls particular attention to the finding to the effect that by means of the false pretenses, representations, answer, affidavit, and wrong concealment with intent to cheat and defraud the plaintiff, Quinn prevented the plaintiff from obtaining a judicial investigation and trial of the issue of property, upon which argument is made that the fraud in the present case was intrinsic in nature and not such fraud as equity will relieve against. This argument is made more fully by the appellant in another connection and will be considered with the point upon which it is most fully developed by the counsel for the appellant. Objection is made to a finding against the defendant in the matter of his alleged meritorious defense to the divorce action, and it is argued either that no such finding should have been made or that there was no evidence to support the finding. A portion of the appellant's argument is based upon the question of whether or not relief in such a case as this can be

given without setting aside the entire divorce decree. The argument upon this point presented upon behalf of the appellant will be considered in connection with that contention. Objection is made to the finding that one of the parcels of land was the separate property of the plaintiff, and it is argued that in such a case as this, under the general rule that the parties must be replaced in the respective positions they occupied at the time of the fraudulent agreement, if for any reason they cannot be so restored, equity is powerless to relieve against an admitted fraud. This, also, is more fully argued under other points made on behalf of the appellant.

[1]  Appellant maintains that since the property in issue in this action was community property, there was no issue upon which a finding could be made and no evidence to support a judgment quieting the plaintiff's title to the undivided one-half interest in the fee in any of the property. It is argued that since the community property is under the absolute control of the husband, and the wife during the existence of the community has only an inchoate right to any of the property, it is beyond the power of the court in this suit to determine her interest in the property of the community. The community no longer exists. If in a divorce case the parties agree to a division of the community property, it is unnecessary for the court to adjudicate upon their respective interests in the former community property. If no such agreement is made, it is the duty of the court in which the divorce proceeding is pending to determine the relative interests of the spouses in their common accumulation. In this case the parties did in form agree upon substantially an equal division of the community property between them. The wife claims in this suit that in entering into the former agreement, she was deluded and defrauded of her one-half interest in the forty-five thousand dollars worth of securities secreted by the husband. The lower court awarded to her this one-half interest and declared that the property of the former husband was burdened with a trust to pay her the amount of the award. If there was jurisdiction in the court to grant relief to the defrauded wife, under a well-established rule the court might make any decree within those principles of good conscience and fair dealing which are recognized as controlling the discretion of the chancellor.

[2] Under the rule of rescission, the appellant contends that since the plaintiff did not offer to return to the defendant the property received by her under the stipulation, she has failed to bring herself within the requirement that one who seeks relief at the hands of a court of equity must first do equity. It is further argued that since the attack is upon the divorce decree, the decree must be set aside in its entirety, if at all, and because the parties cannot be restored to their original positions, a court of equity can give the defrauded wife no relief. The fallacy of the first of these contentions is that in this suit, the wife was not seeking to have any new evaluation made of the property which had been divided, for the purpose of redivision, but was seeking only one-half of the property which had been secreted. Nothing would have been gained by undoing what had been done in regard to the property divided and the law does not require idle things to be done. The result would have been the same if she had herself deeded back the property she received, or if the court, upon the evidence submitted to it, had decreed that she owned the property she had formerly received and was entitled to twenty-two thousand five hundred dollars more. "It is not an invariable rule that rescission of a contract obtained by fraud will be denied merely upon the ground that the parties cannot be placed in *statu quo* . . . Parties engaged in a fraudulent attempt to obtain a neighbor's property are not the objects of the special solicitude of the court. . . . Restoration is not exacted on account of any feeling of partiality in regard to the fraudulent party. The law cares very little what his loss may be and exacts nothing for his sake." (*Green* v. *Duvergey,* 146 Cal. 379–389, 390, [80 Pac. 234, 238].)

In regard to the second contention under this point: "The judgment is not under review, but an issue is being tried as to whether the plaintiff is entitled to have a court of equity interpose in her behalf. The judgment is not conclusive in such a case. The question to be determined is whether the adjudication was not produced by fraud or mistake. It may be said that in such a case the legal validity of the judgment is admitted, and it is because of its validity, or apparent validity, that the plaintiff requires to be relieved from it." (*Eickhoff* v. *Eickhoff,* 107 Cal. 48, [48 Am. St. Rep. 110, 40 Pac. 25].) It is not necessary under the rule announced in

*Green* .v. *Duvergey, supra,* that a divorce decree be set aside either in whole or in part.        **[3]**        The sole question is whether or not under the facts of the present case the court had power to grant relief to the defrauded wife. This question is the one raised by the general demurrer of the defendant, his motion at the opening of the trial to exclude all evidence in support of the allegations of the complaint and his attack upon the judgment here. All of his other contentions merge in the determination of this contention. In reliance upon *United States* v. *Throckmorton,* 98 U. S. 61, [25 L. Ed. 93, see, also, Rose's U. S. Notes] ; *Pico* v. *Cohn,* 91 Cal. 129, [25 Am. St. Rep. 159, 13 L. R. A. 336, 25 Pac. 970, 27 Pac. 537], and a long line of decisions announcing the same principle, the appellant maintains that no relief can be granted the plaintiff in this action because the admitted fraud was intrinsic and should have been uncovered in the original suit. Lengthy quotations are made in the appellants' brief from these cases. There could be no question in regard to the application of the rule if the fraud in the present case were intrinsic. The appellant forcefully argues that because the plaintiff claims she was deceived by the statements in the answer and cross-complaint, filed in the divorce suit, and in the affidavit made by Quinn, the fraud was necessarily intrinsic, and says that "if a party may be allowed to litigate anew the matters in controversy on the ground that she relied on her adversary's pleading, then trials might be dispensed with altogether for their functions would have ceased." This position of appellant cannot be maintained. The statement of its corollary shows its fallacy as applied to the facts here. If the statements made by Quinn had not been made in his pleading or in his affidavit filed in the suit, but had been made to the plaintiff out of court, under the contention of the learned counsel for the appellant they might have furnished a reason for a court of equity relieving the plaintiff from the fraud practiced upon her. Can it be said that untrue statements by which the plaintiff was deceived lost anything of their effect by having been sworn to and filed in the pending divorce action? To answer this question in the affirmative would be to suggest a ready means for dishonest persons to accomplish fraudulent results. The rule is that false statements made upon the record will not warrant the setting aside of the judgment because the court was deceived

by them.  Here there is no contention made that the court
was deceived, but that the respondent was deceived, and in-
duced thereby to enter into the fraudulent agreement.  The
false statements were made.  The lower court found upon
evidence to that effect that the plaintiff relied upon the state-
ments and entered into a contract which was made out of
court.  The plaintiff claimed the aid of a court of equity, not
because the false statements were sworn to, but because they
were false.  She does not seek relief from the judgment be-
cause it was based on perjured testimony, but because she was
induced by false statements to enter into a contract out of
court by which she was precluded from submitting to the
court the very questions which but for the contract would
have been submitted to judicial investigation.  In the leading
case in this state—*Pico* v. *Cohn,* 91 Cal. 129, [25 Am. St. Rep.
159, 13 L. R. A. 336, 25 Pac. 970]—where a judgment was
rendered upon perjured evidence induced by bribery, the
court, in holding that equity would not relieve from such a
fraud, in its opinion asked and answered the question of
what is an extrinsic or collateral fraud within the meaning
of the rule.  ''Among the instances given in the books, are
such as these, keeping the unsuccessful party away from the
court by a false promise of compromise, or purposely keeping
him in ignorance of the suit; or where an attorney fraudu-
lently pretends to represent a party and connives at his
defeat, or being regularly employed, corruptly sells out his
client's interest.  In all such instances, the unsuccessful party
is really prevented by the fraudulent contrivance of his ad-
versary from having a trial; but when he has a trial, he must
be prepared to meet and expose perjury then and there.''
(*Pico* v. *Cohn,* 91 Cal. 139, [25 Am. St. Rep. 159, 13 L. R. A.
336, 25 Pac. 971].)  In this case, by the fraudulent con-
trivance of Quinn, the lower court found the plaintiff was
prevented from having a trial upon the issue raised by the
pleadings in regard to the amount of the community property.
It has too often been stated to require the citation of authority
that equity will not attempt to put a fence around fraud nor
to define just what form of deceit is fraudulent.  The sug-
gestion in *Pico* v. *Cohn* of certain things which had been de-
termined to be collateral fraud was never intended to be and
was not a recital of all of the devices in which dishonest men
may engage to prevent the trial of issues of fact.  [4]  It is

argued that because the court found, pursuant to the fraudulent contract, that the division of community property in accordance with its terms was in absolute, entire, and complete satisfaction and discharge of all claims which either party might assert to the other, there was an adjudication beyond the reach of the court of equity because, as well stated by counsel for the appellant, a judgment entered into upon a stipulation of the parties is as sacred and unimpeachable as any other judgment. It is equally true that such a judgment is no more sacred than any other judgment. Counsel say: "If the property rights of the parties to the divorce action had been withdrawn entirely from the case a different question might have arisen. If the decree had been silent as to property, a different question might have arisen." They were withdrawn. The stipulation, as has been shown, expressly provided that they be incorporated in the judgment as agreed upon, and the judgment expressly incorporated them. There was no trial upon the property issues. The stipulation itself shows there was no judicial examination of the facts regarding the property issues. These matters were as effectually withdrawn from any judicial consideration as if they had been expressly withdrawn by the stipulation. If the statement of counsel be true that a different case would have been presented if the stipulation had declared what was the fact—that the court was not to adjudicate upon the property issues, but to enter a decree in accordance with the agreement of the parties—it follows that all that a dishonest party litigant need do to make his fraudulent contract effective is to go one step further in his scheme of fraud and stipulate that the court in its decree shall follow the language of the fraudulent stipulation. Such a conclusion would be intolerable. The case falls within that class where chancellors have repeated in every conceivable way that the effort on the part of the fraudulent actor more securely to bind his victim is itself one of the most convincing evidences of fraud.

As was said by the supreme court, speaking by Mr. Justice Crockett: "It would be a reproach to the administration of justice if such transactions were beyond the reach of a court of equity whose peculiar province is to strip off the flimsy disguises in which fraudulent actions are so often clothed, and to regard the substance, rather than the form." (*Perkins* v. *Center,* 35 Cal. 721.)

From the appellant's brief it appears that after this case was argued and submitted in the court below the court of appeal, first appellate district, decided the case of *Vragnizan* v. *Savings Union etc. Co.,* 31 Cal. App. 709, [161 Pac. 507], and that the respondent relies upon that case. It is sought to distinguish that case from the present one because the fraudulent stipulation in that case expressly withdrew from the consideration of the court the issues in regard to community property. But in this case the fraudulent stipulation just as effectually withdrew those issues from the consideration of the court, and expressly provided that the court should find and make its decree in accordance with the fraudulent recitals in the stipulation. There is no difference in principle between the two cases.

[5] The appellant argues that, under the rule by which equity denies relief in those cases where the adverse party has been guilty of negligence or lack of diligence, the plaintiff in this case was armed with the strongest weapon—that of cross-examination of the defendant—and because she failed to exercise it she should be denied relief in this suit. In the larger object of defrauding the plaintiff the very purpose and effect of the stipulation was to cause her to lay down this strong weapon of defense. By reason of the fraudulent stipulation the plaintiff was deprived alike of her privilege of cross-examination of defendant and of her right to have a judicial determination in regard to the amount of the community property. Because of the defendant's fraud, he was subjected to examination in the present case, and the court did investigate the question of the amount of community property and determined that the plaintiff was entitled to one-half of that which, in this case, the defendant admitted he had fraudulently secreted.

The judgment is affirmed.

Haven, J., and Brittain, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 2, 1919.

Shaw, J., Melvin, J., Lawlor, J., Wilbur, J., Lennon, J., and Olney J., concurred.