In the Matter of the Estate of RUTH MORRISON SHUFF, Deceased.

Surrogate's Court, Kings County, June 5, 1934.

*A. B. Freedman*, for the petitioners.

*Oscar Levine* [*Bessie Farberman* of counsel], for the respondent.

WINGATE, S.   It is somewhat unusual, in view of the multitudinous adverse adjudications on the subject, to encounter a litigant who seriously supports the validity of the variety of foreign divorce which is popularly known as the "mail-order" type.   Such, however, is the experience of the court in the present proceeding for the removal of the administrator of this estate.

The pertinent facts, in so far as not stipulated, are clearly established by uncontradicted evidence.   The present respondent married a woman by the name of Betty, in April, 1923, and lived with her continuously in Brooklyn, where he is engaged in business, for approximately nine and a half years.   Two children were born of the marriage.   In April, 1933, she instituted an action against him in the Supreme Court for Kings county for a legal separation, which is stated to be still pending and undetermined.

Apparently angered by this action on the part of his wife, the respondent had an action for an absolute divorce instituted on his behalf in Ciudad Juarez, State of Chihuahua, Mexico.   He never visited Mexico himself, and during the entire pendency of the "action" continued his residence in Brooklyn.   No process was served on the wife, she was not represented in the action, did not consent to it and was totally unaware of its institution until more than five months after the making in the Mexican court of a decree which purported to grant an absolute divorce to the respondent.

This purported decree was dated September 1, 1933, at which time respondent was still in actual residence here.   He asserts that on September sixth he went to New Jersey and stayed there for about a week, during which time a marriage between him and the present decedent was solemnized in the Recorder's Court in New Jersey.   The couple thereupon returned to Brooklyn and lived together here as man and wife until the death of the decedent which occurred on or about March 20, 1934.

On the following day the respondent verified a petition for letters of administration on her estate on the ground that he was her husband.   Letters in that capacity were issued to him on March twenty-fourth.   The present application for their revocation is made by the parents of the decedent.   There was no issue of this "marriage."

In spite of the repeated determinations of all tribunals to the contrary, the impression appears to prevail in certain quarters that marriage is no more than a coat which can be shed at the caprice of the wearer when it no longer suits his fancy. Such is not, and never has been, the law of this State. As this court pointed out in *Matter of Bennett* (135 Misc. 486, 493), after a reasonably full examination of pertinent authorities, the basic principle underlying the entire subject is that only one sovereignty possesses jurisdiction over the marital status and that is the one in which the matrimonial domicile exists or would exist, except for the unjustifiable act of one of the parties to the matrimonial relation.

In the case at bar the matrimonial domicile from the moment of respondent's marriage to Betty until the time the Mexican court purported to dissolve the marriage relation, was the State of New York. Even were it possible for the respondent to effect a change of his own domicile by the medium of a letter, which has not yet been determined by any court, he could not effect a transfer of the situs of the matrimonial status by any such summary means. It follows that the Mexican courts were wholly without jurisdiction over either the parties or the status (*Bell* v. *Bell*, 181 U. S. 175, 177, 178; *Andrews* v. *Andrews*, 188 id. 14, 41; *Haddock* v. *Haddock*, 201 id. 562; *Barber* v. *Barber*, 21 How. [U. S.] 582, 595), and their decree was wholly worthless for the purpose of dissolving the marriage, or, in fact, for any purpose. (*Baumann* v. *Baumann*, 250 N. Y. 382, 384; *Fischer* v. *Fischer*, 254 id. 463, 466; *Matter of Alzmann* v. *Maher*, 231 App. Div. 139, 141; *Lefferts* v. *Lefferts*, 238 id. 37, 38; *Matter of Grossman*, 139 Misc. 646, 648; *Matter of Thomann*, FOLEY, S., 144 id. 497, 498; *Richman* v. *Richman*, 148 id. 387, 388.)

It follows that when the respondent married the decedent he already had a wife by a valid and undissolved marriage, wherefore the subsequent marriage to the decedent would be absolutely void except in those jurisdictions in which polygamy is countenanced. Since the respondent has failed to demonstrate that the laws of New Jersey permit of this practice, it must be presumed that they correspond with those of New York in this respect (*Matter of Dumarest*, 146 Misc. 442, 443; *Matter of Klyszewski*, 140 id. 241, 244; *Matter of Marsland*, 142 id. 230, 232), and that the purported marriage was equally void there.

The principle of the presumption in favor of the validity of a ceremonial marriage, urged by respondent, cannot be invoked against an adequate factual demonstration to the contrary. (*Matter of Findlay*, 253 N. Y. 1, 7.)

It follows that the respondent was at no time validly married to the decedent; wherefore his allegation to that effect in his petition for administration was a false allegation of a material fact requiring the revocation of his letters.

Proceed accordingly.