[Civ. No. 12290.   Second Appellate District, Division Two.—January 12, 1940.]

In the Matter of the Estate of WILLIAM SLAVENS McNUTT, Deceased. LOUISE McNUTT, Appellant, v. GEORGIA McNALLY McNUTT, Respondent.

[Civ. No. 12291.   Second Appellate District, Division Two.—January 12, 1940.]

GEORGIA McNALLY McNUTT, Respondent, v. LOUISE McNUTT, Appellant.

544

Joseph A. Spray and Charles P. Gould for Appellant.

Freston & Files, Sydney Wetzler, Ralph E. Lewis and James A. McLaughlin for Respondent.

MOORE, P. J.—William Slavens McNutt departed this life January 25, 1938, leaving two women, each claiming widowhood by reason of his death. He was married to Georgia McNutt, the plaintiff, August 6, 1907, and abode with her until after his infatuation with Louise Glorius, defendant, in 1924, when he abandoned plaintiff. In 1926, while plaintiff was destitute and broken in health, under decedent's duress and upon his fraudulent representations that he would do nothing for her if she consulted her own lawyer, and solely by reason thereof and because of her dire need, she signed a writing whereby decedent agreed to pay her $50 per week. In 1927, while residing and being actually within the State of New York, decedent procured a decree of divorce from a court at Hermosillo, State of Sonora, Mexico, and promptly pretended to celebrate a marriage with defendant. He lived with her until his dissolution.

Upon the passing of decedent, defendant petitioned for letters of administration of his estate, alleging that she was the widow. Thirteen days later, plaintiff filed her petition in the same proceeding alleging her long coverture, the invalidity of the property settlement by reason of said fraud and duress, and the nullity of said Sonora decree because of want of the court's jurisdiction in that decedent never established residence in said Mexican state. Because of these facts, plaintiff asserted her right to administer the estate and to possess it all by reason of decedent's intestacy. Subsequently, basing her cause upon said duress and fraud of decedent and the asserted nullity of said divorce decree, plaintiff filed a civil

action for the recovery of: (1) $7,900, the proceeds collected by defendant on a life insurance policy purchased by decedent with community funds; (2) a certain yacht given defendant by decedent; and (3) all other movables given or delivered and all moneys paid to defendant by decedent in excess of the household necessities of decedent and defendant. The actions were consolidated for trial, which resulted in findings in accordance with plaintiff's allegations in both cases and in two separate judgments from which these appeals are taken.

In addition to the findings above indicated, the court determined also that defendant procured a divorce in the State of Nevada from Leo V. Glorius, while she was a resident of the State of New York; that all gifts to defendant by decedent were paid out of community moneys; and that plaintiff was ignorant of decedent's wealth and income at the time of said settlement.

From the facts as found, the court decided that the Nevada and Sonora divorce decrees were void; that decedent's marriage to defendant was void; that plaintiff was decedent's lawful wife at the time of his death; that plaintiff is entitled to recover said $7,900; and that plaintiff is the lawful owner and entitled to the possession of said yacht and all other movable property and moneys delivered and paid to defendant by the decedent.

Defendant relies for a reversal upon the following: (I) That the plaintiff was estopped from asserting the invalidity of her divorce from, and the property settlement with, decedent; (II) that the validity of the property settlement was not properly at issue; (III) that the court erred in declaring void the gifts made to the defendant *in toto*; and (IV) that the court erred in refusing testimony as to the relations existing between plaintiff and decedent and his brother from the date of the settlement to the date of decedent's death.

I. There is no doubt that the Sonora decree of divorce was void. It is held in New York that "the basic principle underlying the entire subject is that only one sovereignty possesses jurisdiction over the marital status, and that is the one in which the matrimonial domicile exists", etc. (*In re Shuff's Estate,* 151 Misc. 754 [272 N. Y. Supp. 418].) In California it is held that "domicile is necessary to give a court jurisdiction in an action for divorce . . . and a state cannot exercise through its courts jurisdiction to dissolve a

marriage where neither spouse is domiciled within the state . . . To hold that the courts of Mexico ever acquired jurisdiction to render the decree presented by appellant would be a travesty on justice. . . . '' (*Ryder* v. *Ryder*, 2 Cal. App. (2d) 426 [37 Pac. (2d) 1069] ; *People* v. *Harlow*, 9 Cal. App. (2d) 643 [50 Pac. (2d) 1052].)

Since a divorce proceeding is an action *in rem* and both parties and the state have an interest in the *res*, the Mexican decree obtained by the decedent was properly impeached because of lack of jurisdiction. Nothing could be done to confer jurisdiction upon the Sonora court except to reside within that Mexican state. The plaintiff here, who was defendant there, was powerless even by written stipulation to confer jurisdiction upon the foreign court. (*Kegley* v. *Kegley*, 16 Cal. App. (2d) 216 [60 Pac. (2d) 482].)  ██  If she could not stipulate it by writing, she could not by her subsequent silence retroactively cure the vice of the decree which she was entitled to show in the California courts to defeat an attempt to establish rights based upon such judgment. (*Estate of Bruneman*, 32 Cal. App. (2d) 606 [90 Pac. (2d) 323].) Since the foreign decree was void for lack of jurisdiction in the court, it was proper to show that fact upon the trial when its validity was asserted against plaintiff's legal rights. (*DuQuesnay* v. *Henderson*, 24 Cal. App. (2d) 11 [74 Pac. (2d) 294].)

The authorities cited by defendant to establish the validity of the Sonora decree are not apropos. In the Bruguiere case (*Bruguiere* v. *Bruguiere*, 172 Cal. 199 [155 Pac. 988, Ann. Cas. 1917E, 122] ), the court was not concerned with a decree void upon its face. It dealt with a decree which was vicious because of the public policy of California which invalidates a decree when gained by simulated domicile. Also, she had remarried, waiving all claims upon him who had procured an illegal decree. She never questioned the legality of his decree until her subsequent marriage had proved a failure. In the Morehouse case, (Tex. Civ. App.) [111 S. W. (2d) 831], the couple had lived together fifteen years when he obtained a divorce in Texas upon his false affidavit of her nonresidence. The proceedings were strictly in accordance with statutory law. He remarried two years later, in 1924, effected a settlement with plaintiff in 1925. She was estopped because the second wife was an ''innocent participant in the second mar-

riage'', because the court had jurisdiction of the *res,* and because plaintiff had accepted payments under their property settlement for over ten years and she treated ''it as valid and acts as an unmarried person in violation of any obligation incident to the former status''. The Texas court had jurisdiction but was imposed upon by the husband's fraud, of which the wife had actual knowledge. *Drummond* v. *Lynch,* (82 Fed. (2d) 806) is not a parallel because (1) the court did have jurisdiction and (2) the wife treated the divorce as valid by her own remarriage. In *Dry* v. *Rice,* 147 Va. 331 [137 S. E. 473], the husband sued only after his wife had already divorced him. In *Berman* v. *Thomas,* 41 Ariz. 457 [19 Pac. (2d) 685], jurisdiction was not involved. In *Hughes* v. *Leonard,* 66 Colo. 500 [181 Pac. 200], the court found neither duress nor fraud. The case of *In re Davis,* 106 Cal. 453 [39 Pac. 756], raised no question of rights of inheritance by the former wife. Having concededly waived such rights, she sought to administer upon his estate. A wife with full knowledge that her husband has, through fraud or perjury, *not going to the jurisdiction of the court,* obtained a decree of divorce, may not sit idly by for years and until he is deceased and then successfully invoke equity to gain property lost by acquiescence in acts prohibited by law or public policy. (*McElrath* v. *McElrath,* 120 Minn. 380 [139 N. W. 708].) ▆ But in the case at bar, the fraud and perjury committed by the decedent went to the jurisdiction of the court. Consequently the decree cannot estop the plaintiff now from asserting her rights as community survivor. Neither reason nor morals require her to journey into a foreign land, among strange people, to answer the call of a court that had not the slightest claim to jurisdiction over her status.

▆ In spite of the nullity of said decree and its inefficacy as a basis of estoppel, defendant contends plaintiff is estopped by virtue of the property settlement, which she made with decedent in October, 1926. It is claimed that by her silence and inaction after the settlement, and by her continuous receipt of the payments it provided until decedent's death, she should be estopped even though the nullity of the decree be conceded. The language of that writing is as follows:

''The said Georgia McNally McNutt agrees to and does hereby grant, remise, release and quitclaim unto the said William Slavens McNutt all her right, title, interest and

dowry in and to all real estate whereof the said William Slavens McNutt is or may hereafter become seized or possessed and also agrees and does hereby release the said William Slavens McNutt of and from all claims of every character and description.''

Conceding for the moment that the fraud and duress found by the court are without sufficient support, this instrument strictly construed, as it must be (*Jones* v. *Lamont,* 118 Cal. 499 [50 Pac. 766, 62 Am. St. Rep. 251] ; *In re Garcelon's Estate,* 104 Cal. 570 [38 Pac. 414, 43 Am. St. Rep. 134, 32 L. R. A. 595]) does not purport to surrender plaintiff's position as heir of her husband or her right to administer upon his estate, or her interest in his personal property. At the most, she released nothing but her (1) dower interest, and (2) interest in his realty. In view of the language used, the court would not have been justified in reading into the contract terms which the parties did not deem necessary to express their intention. ██ It is a definite doctrine of the law that courts will not enlarge the language of a postnuptial agreement ''so as to deprive either spouse of such rights unless there is a clear and unmistakable intention to barter them away and to reach such conclusion the contract must not be of doubtful interpretation but must by express terms or by necessary implication, clearly so provide''. (*Girard* v. *Girard,* 29 N. M. 189 [221 Pac. 801, 35 A. L. R. 1493].) Defendant attempts to bolster her claim of estoppel by the authority of *In re Davis, supra.* That case is not pertinent. Mrs. Davis agreed ''that she will receive the same in full satisfaction of all claims she may have as wife of said W. W. Davis on any property which he now has or may in any manner acquire . . . and surrender forever all claims of any nature she may now or hereafter have against any property he may now have or may hereafter in any manner acquire''. But even with such comprehensive language to defeat Mrs. Davis' claim to administer the estate, Mr. Justice McFarland, in a concurring opinion raised a doubt as to ''whether or not she did so relinquish her heirship''.

If it had been the intention of the parties that plaintiff should waive her right to inherit from decedent, under such circumstances as those presented, ''the easiest and most natural thing in the world would have been for them to have simply, plainly and in apt language said so''. (*Girard* v.

*Girard, supra.*) By releasing her dower rights, we cannot construe that it was the intention of the parties that decedent was effecting a release of plaintiff's rights of inheritance or of her rights as a widow. (*Sullings* v. *Richmond,* 5 Allen (Mass.), p. 187 [81 Am. Dec. 742].)

To amend decedent's writing so as now to exclude plaintiff from inheriting his estate would be to deny the possibility that he suffered a change of heart; that memories of his early attachment had diverted him from the execution of a will in favor of defendant. A reasonable interpretation of the property settlement contract requires the conclusion that the rights now asserted by plaintiff were not by said instrument forfeited.

■ But, upon proof which was deemed sufficient for the trial court, the property settlement was annulled. While the evidence is meager, it is ample to warrant the finding of duress, if not of fraud. The judgment annulling the contract on those grounds, being supported, must stand. This renders the plea of estoppel, based upon the contract, without force even though plaintiff had by its terms sacrificed all of her rights by an acceptance of said property settlement. Plaintiff had been wronged immeasurably. Driven from her home after nineteen years of conjugal loyalty and service to decedent, only after his fatuous infatuation with a younger woman; forced by his duress to accept a pittance of his earnings as her "share" of the community estate, why should she now be condemned to silence by the plea of one who knowingly participated in wrecking a home, in sending an unhappy woman into seclusion, and in usurping the chair that was not hers by law or by common morality? This cannot be merely because, to defeat distress, she used the meager stipend tossed from her husband's bounty and to which she was entitled in the absence of a contract. ■ Moreover, defendant suffered no detriment by the plaintiff's modest withdrawal from conflict. Rather did she, unmolested, reap the benefits of decedent's prosperous annual income through eleven years; in one year, it exceeded the figure of $49,000. Through plaintiff's reticence, defendant was left to exult in a realm which she would never have known had she declined the benefit of illicit alliances and the advantage of fraudulent divorces. Only one who is innocent may be permitted to plead an estoppel based upon timidity and forbearance, and

then only when the same innocent would suffer deprivation by denying her plea. Since plaintiff was the lawful heir to the estate seized of her husband at his death, now that he has passed on, she is strictly within her rights to declare the facts to gain her own. (*Trimble* v. *Trimble,* 219 Cal. 340 [26 Pac. (2d) 477].) Nothing that she did or failed to do with respect to the decree can create an estoppel. (*Ryder* v. *Ryder, supra.*) Nothing that she did or failed to do with respect to the property settlement can now defeat her legal claims. She maintained her status; she neither married nor published that she was a single woman and the pittance paid her was far less than she was entitled to receive as the wife of decedent. In no sense has defendant been damaged by plaintiff's behavior.

The authorities cited by defendant in support of her plea of estoppel are not in point. In the *Estate of Sloan,* 179 Cal. 393 [177 Pac. 150], Mrs. Sloan had received with her settlement properties and moneys that were adequate and far in excess of that required for her support. In the *Estate of Yoell,* 164 Cal. 540 [129 Pac. 999], the couple had been married thirty-five years. She executed a property settlement upon the advice of counsel. In asking for an increase of allowance, she did not even plead fraud in its procurement. Furthermore, under the agreement, her husband had paid her certain moneys and conveyed to her certain lands. The agreement stood unimpeached and the rights of the parties were left to be adjudicated in accordance with its legal terms and effect.

The contention that plaintiff should have restored the consideration for the settlement in order to be entitled to rescind is unsupported. In any ordinary case of rescission, a tender of benefits received is the primary predicate to a successful maintenance of an action. Two exceptions often occur, namely: (1) Where the thing received by the injured party has no value, and (2) where the thing received is no more than the oppressor was bound to deliver to the oppressed in the absence of a contract. It were manifestly unjust to require of a wife, as a prerequisite to the maintenance of an action for rescission of a property settlement on the ground of fraud, that she restore to the husband the moneys received by her and used for living expenses, which, under the law she would have been entitled to receive and use notwithstand-

ing the contract. (*Locke-Paddon* v. *Locke-Paddon,* 194 Cal. 73 [227 Pac. 715]; *Milekovich* v. *Quinn,* 40 Cal. App. 537 [181 Pac. 256].)

■ Since the plaintiff herein was entitled to receive "a modest personal allowance" from her husband, who counted his annual income in the tens of thousands, it would have been inequitable to require the plaintiff to restore the sums which had supported her in her distress in order to maintain her action. (*Milekovich* v. *Quinn, supra*; *Green* v. *Duvergey,* 146 Cal. 379 [80 Pac. 234].) No estoppel arises from the acceptance of benefits provided for by a contract, where the person accepting is entitled thereto, regardless of the transaction in question. (21 Cor. Jur. 1208.)

■ II. The validity of the settlement was a proper issue of the action. It was the subject of a lawsuit because its validity had never been adjudicated. It is attacked *directly* here in these two proceedings. Plaintiff is entitled to have it cancelled that it might not be an extant record against her claim as community survivor. She was entitled in either action "to assert all claims and defenses pertaining to her property rights because the decree would be conclusive upon the widow when the estate is distributed." (*Estate of Cover,* 188 Cal. 133 [204 Pac. 583]; *Estate of Warner,* 6 Cal. App. 361 [92 Pac. 191].)

■ III. The gifts of decedent to defendant should not have been cancelled *in toto.* Plaintiff frankly confesses that this question has "never been completely settled". The husband, out of community funds, paid for a life insurance policy, the total proceeds of which were collected by defendant in the sum of $7,900. Also, he gave defendant a valuable yacht and miscellaneous movables and moneys. The judgment declares these gifts void, orders the yacht and insurance money restored to plaintiff and orders defendant to deliver plaintiff "any other moneys or properties which she received from decedent by way of 'gifts'." In this respect the court erred.

Decedent, a community partner, was absolute owner of one-half and had the management and control of all of the community estate. (Civ. Code, sec. 161a.) He was forbidden to make a gift of the personal property of the estate. (Civ. Code, sec. 172.) This inhibition was clearly intended to protect the wife's share from the prodigality of a reckless or faith-

less husband. This intent is further evidenced by the succeeding clause which forbids his sale of the community's movables "without a valuable consideration". But being the "present" owner of one-half of such movables (Civ. Code, sec. 161a) his gift thereof cannot be disturbed after his death. (*Ballinger* v. *Ballinger,* 9 Cal. (2d) 330 [70 Pac. (2d) 629]; *Trimble* v. *Trimble, supra.*) The moneys invested in the life policy and in the yacht never lost their community character "during the lifetime of the husband and after his death the attempted gift thereof could be set aside to the extent of one-half thereof". (*Ballinger* v. *Ballinger, supra.*) "The only logical conclusion is that the wife's right to assail the conveyance where, as here, the action was brought *after the husband's death,* is limited to an undivided half of the property". (*Dargie* v. *Patterson,* 176 Cal. 714 [169 Pac. 360].) "There would thus seem to be no escape from the effect of our holding in the case of *Dargie* v. *Patterson* . . . and only set aside his conveyance as to the widow's one-half interest therein." (*Lahaney* v. *Lahaney,* 208 Cal. 323 [281 Pac. 67].) The husband's deed to community property . . . is valid and binding as to the husband's one-half interest . . . and the deed should not, therefore, be decreed wholly void and should not be cancelled. (*Pretzer* v. *Pretzer,* 215 Cal. 659 [12 Pac. (2d) 429].)

Under the foregoing authorities and section 172a of the Civil Code, a husband's gift of community property without his wife's consent may be set aside in its entirety by the wife during her husband's lifetime; but after his death, such gift may be cancelled to the extent of only one-half. (*Trimble* v. *Trimble, supra; Matthews* v. *Hamburger, ante,* p. 182 [97 Pac. (2d) 465].) It follows, therefore, that the gifts by decedent to defendant may now, after his death, be avoided as to one-half thereof, but no more.

IV. To the contention that the court erred in sustaining objections to questions asked and letters offered to prove plaintiff's friendly relations with decedent and his brother in disproof of the fraud and duress claimed to have been perpetrated by them upon her, there are two answers, viz.: (1) such rulings were within the sound discretion of the trial court and (2) they were not prejudicial, if erroneous. A judgment will not be reversed for error which does not

prejudice the substantial rights of appellant.    (2 Cal. Jur. 1022.)

In the action of *Georgia McNally McNutt* v. *Louise McNutt,* the judgment is amended by striking subdivisions 3 and 5 therefrom and inserting the following:

(3) That plaintiff have and recover of and from the defendant the sum of $4,500, being one-half of the moneys collected by the defendant upon a certain policy of insurance purchased by decedent from the New England Mutual Life Insurance Company.

(5) That plaintiff is entitled to the ownership and immediate possession of an undivided one-half of all other moneys and property received by defendant from decedent as gifts or as agent or trustee of decedent, and the plaintiff's title to said one-half of said moneys and property is hereby quieted.

In the matter of the estate of William Slavens McNutt, the judgment is amended by adding to the end of said judgment, the following:

"And the said Georgia McNally McNutt as administratrix of the estate of the said William Slavens McNutt is entitled to the immediate possession of one-half of all moneys given by the said William Slavens McNutt to the said Louise McNutt in his lifetime not expended by decedent and the said Louise McNutt for household expenses in his lifetime; and said administratrix is entitled to the immediate possession of an undivided one-half interest in and to all movable property received by said Louise McNutt from the said decedent as gift or otherwise."

As amended, both judgments are affirmed.

WOOD, J., Concurring.—I concur in the judgment.    In the property settlement agreement plaintiff did not relinquish her right to inherit and since the Mexican divorce was invalid she is entitled to prevail in both actions.    I do not concur in the views expressed in the foregoing opinion on the subject of plaintiff's allegations of fraud and duress and the trial court's rulings in relation thereto.    In my opinion plaintiff is not in position to present the issue of fraud and duress.

McCOMB, J., Dissenting.—I dissent from the portion of the order affirming the judgments.    The respondent, as I read the record, far from being the paragon of virtue described in the main opinion, was quite the contrary.    Disregarding her

marriage vows to abide with him "until death do us part" and "for richer or poorer", she connived with the decedent at a time when he was in financial distress to permit him to obtain a divorce from her, however being insistent that he contribute to her financial upkeep, which he did for a period of over eleven years (without protest on her part) in the total sum of $29,700.

In the meantime, while accepting the fruits of his labors, she contributed nothing toward his well being (physically or spiritually), but on the contrary harassed him on each occasion when, due to financial stress, he was tardy in furnishing her funds. She permitted him to marry appellant and to live with her over a number of years without protest. March 4, 1927, decedent and appellant were married and appellant lived with him as his wife, cared for him as a loving and dutiful spouse, including administering to him in his last illness, all with the knowledge and without protest of respondent.

Now that his lips have been hushed by the Grim Reaper, having accepted decedent's bounty, she desires to reap the benefit of his years of labor, toward which she contributed nothing and to which appellant undoubtedly contributed much, by claiming the benefit of her own deceit and fraud.

The rule as announced in the main decision, in my opinion, finds no support either in an enlightened jurisprudence, equity, good morals, or substantial justice. Certainly, if the main decision is to stand, the legislature at the earliest opportunity should adopt appropriate legislation to prevent the reoccurrence of such a palpably unjust result.

The essential facts and the law applicable thereto are, in my opinion, the following:

Mr. McNutt (who died January 25, 1938) was married to respondent in New York on August 6, 1907. October 13, 1926, he entered into a property settlement with respondent, which she claims was induced through fraud and duress, by the terms of which he obligated himself to pay her $50 per week from the date of the agreement until the death of either party. The property settlement contained also this provision:

"The same Georgia M. McNutt agrees to and does hereby grant, remise, release and quit claim unto the said William Slavens McNutt, all her right, title, interest and dower in

and to all real estate whereof the said William Slavens McNutt is or may hereafter become seized or possessed, and also agrees and does hereby release the said William Slavens McNutt of and from all claims of every character and description.''

Respondent also executed a document by which she consented that decedent might obtain a divorce in Mexico. This he did shortly thereafter. Subsequently decedent married appellant in the State of New Jersey, with whom he lived, with the knowledge of respondent, until the time of his death.

Decedent abided by the terms of his agreement with respondent, paying her $50 a week from the date of the agreement until his death, a period of eleven years, which in the aggregate amounted to the sum of $29,700. It is conceded that the divorce decree obtained by decedent in Mexico was void, for the reason that the court did not have jurisdiction to grant the decree.

Respondent claims that she is entitled to be administratrix of decedent's estate as his surviving widow; that certain property, including the proceeds of an insurance policy paid to appellant, constitutes community property, and that therefore as decedent's surviving widow she is entitled to the same.

These are the questions presented for determination:

*First: Is respondent estopped from asserting the invalidity of the divorce decree obtained by decedent in Mexico and the invalidity of the property settlement agreement between herself and decedent, which she alleges was procured through fraud and duress, for the reason that for more than eleven years without objection she accepted the benefits accruing to her under the property settlement agreement, being fully aware of the alleged fraud and duress and that decedent had married appellant?*

*Second: If respondent is estopped to assert the invalidity of the property settlement agreement between herself and decedent, has she forfeited her right to be administratrix of his estate?*

The first question must be answered in the affirmative. Where a party to a property settlement agreement alleged to have been obtained through fraud or duress, knowing of the alleged fraud or duress, accepts benefits under the agreement and treats it as valid during the lifetime of the other party, such party is estopped when the marriage relationship

is dissolved by death to assert the invalidity of the property settlement agreement or a decree of divorce obtained by decedent. (*Bruguiere* v. *Bruguiere,* 172 Cal. 199, 203 [155 Pac. 988, Ann. Cas. 1917E, 122] ; *Estate of Yoell,* 164 Cal. 540, 549 [129 Pac. 999] ; *Morehouse* v. *Morehouse,* (Tex. Civ. App.) [111 S. W. (2d) 831, 834] ; *Drummond* v. *Lynch,* 82 Fed. (2d) 806, 810; *Dry* v. *Rice,* 147 Va. 331 [137 S. E. 473, 475] ; *McElrath* v. *McElrath,* 120 Minn. 380 [139 N. W. 708, 710, 44 L. R. A. (N. S.) 505] ; *Berman* v. *Thomas,* 41 Ariz. 457 [19 Pac. (2d) 685, 688] ; *Hughes* v. *Leonard,* 66 Colo. 500 [181 Pac. 200, 204, 5 A. L. R. 817].)

In *McElrath* v. *McElrath, supra,* the Supreme Court of Minnesota at page 710 thus states the rule:

''We have found no case holding that a spouse, with knowledge that the other, through fraud or perjury, not going to the jurisdiction of the court, has obtained a decree of divorce, may sit idly by for years, until the death of the one guilty of fraud, and then successfully invoke the equity powers of the court to secure property rights. When the spouse wronged by the decree, or any one claiming under such an one, comes into court asking relief, so that property may be reached, it must be done within a reasonable time after knowledge of the fraud, or of facts from which a person of ordinary prudence would proceed to ascertain the true state of affairs.''

Again in *Berman* v. *Thomas, supra,* the Supreme Court of Arizona at page 688 has this to say:

''Nine years elapsed before plaintiff questioned the property settlement or the decree of divorce. Although her husband lived for eight years after they had been divorced and their property rights settled, plaintiff took no action towards asserting her present claims. Her silence during that period can only be accounted for on the theory that she was not dissatisfied therewith. If her husband coerced or compelled her to obtain the divorce and fraudulently deceived her as to the extent and value of the community property, as she alleges in her complaint in cause No. 6252–B, her delay in attacking such proceeding was not because of lack of knowledge of his perfidy in over-reaching her, but for some other reason. If a party can thus await the death of her adversary husband and thereafter secure the acceptance by the court of her version of their matrimonial and property troubles thought to be

adjudicated in their lifetime, the estate of the deceased spouse would be exposed entirely too much to the whims and avarice of the survivor. The plaintiff's delay in attacking the judgment in cause No. 3352–B might have been, and probably was, because she thought, or knew, that she could not successfully attack it so long as her husband was alive and able to contest her attack. After said judgment was entered, she was most of the time living in Globe, where her husband's property was, and when not there was in and about Phoenix, and must have known all about the situation.''

Applying the legal principles enunciated by the foregoing cases to the instant case, we find that respondent in October of 1926 entered into a property settlement agreement with decedent whereby she made a complete release of any claim she might then or thereafter have to the property of decedent, in consideration of the payment to her of $50 per week thereafter. At the same time she consented to a Mexican divorce. February 3, 1927, the Mexican divorce decree was granted and notice served on respondent. March 4, 1927, decedent married appellant, which fact was known to respondent immediately thereafter; and respondent, from the date of the property settlement agreement to the date of the death of decedent, January 25, 1938, accepted from him $50 each week pursuant to their agreement. Shortly after the property settlement agreement was entered into respondent took the same to her attorneys, together with the papers concerning the Mexican divorce. At no time subsequent thereto and prior to decedent's death did she question or take any action to assert the invalidity of the property settlement agreement or the Mexican divorce. She permitted appellant to hold herself out as the lawful wife of decedent and to incur the benefits and obligations incident to a valid marriage.

In view of the foregoing facts, upon the simplest principles of equitable estoppel respondent is estopped after decedent's death to question the validity of either the property settlement agreement or the Mexican divorce decree for the sole purpose of sharing in his estate.

The second question must likewise be answered in the affirmative. The law is established in California that if a wife by property settlement agreement relinquishes any right she has to inherit her husband's property she thereby waives

her right to administer upon his estate. (*In re Davis,* 106 Cal. 453, 456 [39 Pac. 756].) As heretofore pointed out, the property settlement agreement between the parties provided in part as follows:

"The same Georgia M. McNutt agrees to and does hereby grant, remise, release and quit claim unto the said William Slavens McNutt all her right, title, interest and dower in and to all real estate whereof the said William Slavens McNutt is or may be hereafter become seized or possessed, and also agrees and does hereby release the said William Slavens McNutt of and from all claims of every character and description."

*In re Davis, supra,* held that under a similar provision in a property settlement agreement the wife relinquished any right which she might have had to inherit her husband's property or to administer upon his estate. At page 456 our Supreme Court said:

"The appellant contends that inasmuch as the agreement could not and did not take from the wife her status as such, she remains the widow of deceased, and is entitled to administer upon his estate irrespective of the question as to her right in the property. In other words, that she is so entitled merely by reason of being the widow, and that the question as to heirship is not involved on an application for the grant of letters. But in neither respect can appellant's position be sustained without doing violence to the express language of the statute. In the first place, as we have seen, the right of the widow to administer, like that of any other relative, is made to depend upon her right to take of the personal estate; and that being so, the question as to her right to inherit is necessarily involved in the application for letters. (See *Howell* v. *Budd,* 91 Cal. 342 [27 Pac. 747]; *In re Carmody,* 88 Cal. 616, 618 [26 Pac. 373].) Of course, she remains the widow, since the parties could not, by their contract, change their matrimonial status; but it was perfectly competent for them to alter their legal relations as to their property, and this they accomplished. The wife contracted away her inheritable interest in her husband's property, and with that right went the right to administer upon his estate."

For the foregoing reasons the judgments appealed from should, in my opinion, be reversed.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 11, 1940. Carter, J., Gibson, J., and Waste, C. J., voted for a hearing.