[L. A. No. 5760.   Department One.—September 8, 1919.]

In the Matter of the Estate of DAVID S. McCLELLAND, Deceased. LETTIE J. McCLELLAND, Appellant, v. HARRY ALTHOUSE et al., Respondents.

[1] HUSBAND AND WIFE—SEPARATION AND SETTLEMENT AGREEMENT—PROBATE PROCEEDINGS—VALIDITY OF AGREEMENT.—The question of the validity of a separation and settlement agreement between a husband and wife is not brought into issue in proceedings taken by her after her husband's death to set aside the probate of his will, or in proceedings to determine heirship, or in filing objections to the final account of the administration.

[2] ID.—ATTACK BY DIRECT PROCEEDING.—The validity of a separation and settlement agreement between a husband and wife can only be attacked in a direct proceeding.

[3] ESTATES OF DECEASED PERSONS—HEIRSHIP—VALIDITY OF SEPARATION AGREEMENT—FINDING.—In a proceeding by a wife to determine heirship in the estate of her deceased husband, although the court admitted evidence to the effect that the wife had signed a separation and settlement agreement under duress and undue influence, the finding that she was not entitled to any part of the estate must be taken as a finding that the agreement was valid and that she did not sign the instrument under duress or undue influence.

APPEAL from a decree of distribution of the Superior Court of Los Angeles County.   John M. York, Judge.   Affirmed.

The facts are stated in the opinion of the court.

A. Schapp and Chas. E. Hobart for Appellant.

Foster C. Wright for Respondents.

LAWLOR, J.—This is an appeal from the decree of distribution in the matter of the estate of Davis S. McClelland, deceased, entered by the superior court of Los Angeles County, in which Lettie J. McClelland, the widow of the deceased, was denied the right of inheritance on the ground that she was barred by a certain separation and settlement agreement entered into between the decedent and his wife on December 21, 1906.

It appears that decedent and Lettie J. McClelland intermarried in Los Angeles on August 21, 1906, and ever since up to the time of the death of the decedent, June 11, 1916, were husband and wife. At the time of the marriage Mrs. McClelland owned property of the value of about ten thousand dollars and had cash on hand in the amount of two thousand eight hundred dollars, and a monthly income of $87 from her other property. Decedent at that time owned a one-half interest in a saloon in Los Angeles, as well as certain residential property also situated in that city, which was at that time being improved. It also appears that the decedent was rather heavily in debt, though the amount and nature of the indebtedness does not appear. Either at the time of their marriage or shortly before, appellant gave to the decedent the two thousand eight hundred dollars cash which she had on hand. This, it is alleged, decedent used to pay his debts. The union proved to be an unhappy one and on December 21, 1906, decedent and appellant agreed in writing to separate and live apart, the agreement being in terms as follows:

"This agreement made this 21st day of December, 1906, between David S. McClelland, the party of the first part, and Lettie J. McClelland, wife of said David S. McClelland, the party of the second part, witnesseth:

"That whereas the said first party and the said second party were legally and lawfully married on the 21st day of August, 1906, and are now and ever since said 21st day of August, 1906, have been husband and wife, and

"Whereas, the said first party and the said second party are mutually desirous of severing their marital relations with-

out coercion or undue influence or fraud or misrepresentation of any kind whatever, and

"Whereas, there has been no community property acquired since the said marriage, and

"Whereas, there are certain articles of furniture, to-wit: Piano, draperies, bureau, and dining room chairs, table and rugs, and other furniture acquired by each contributing of their separate funds for the purchase of the same, exclusive of certain personal effects and wedding presents belonging to said first party which are herewith specifically exempt, and

"Whereas there will be some expenses, attorney's fees and incidental expenditures for the purpose of completing and ratifying and finally settling the proposed separation,

"Now therefore, in consideration of the premises and in consideration of the covenants hereinafter more specifically set out, the said first party and the said second party do, *and each of them does renounce any and all marital rights which each owes to the other, of any kind or nature, whether legal, moral or equitable, and each renounces, quit claims, and conveys any right or title to any of the estate now owned or possessed by the other or that may be hereafter acquired in any way by the other;* and the said second party hereby acknowledges receipt of Three Hundred ($300) Dollars, from said first party, which said first party advances for the purpose of payment of attorney's fees, expenses and other incidental expenditures in connection with the separation hereto agreed; and the said first party likewise relinquishes and waives any right, title or interest he may have in the above mentioned furniture, to the said second party, and in consideration of the premises and covenants herein specified, the said second party specifically releases the said first party of any and all claims of alimony or support of any kind whatever, it being her desire and wish that on account of their unhappy relationship she should not feel under any financial obligation to said first party or allow financial considerations to enter into her determination to sever the said marital relationship.

"Each party to this agreement herewith solemnly and specifically avers that the foregoing agreement has been entered into without undue influence or fraud or coercion or misrepresentation or from any cause except as herein specified.

"In witness whereof the above parties hereto have hereunto set their hands and seals the day and year first above written.

"Signed in the presence of
　　　"BLANCHE MAXWELL.
　　　　　　　"DAVID S. MCCLELLAND.　　(Seal).
　　　　　　　"LETTIE J. MCCLELLAND.　　(Seal)."

(Italics ours.)

This agreement, at the request of the appellant, was recorded in Los Angeles County and also in Alameda County. Following the separation the appellant went to live in Berkeley. About ten years passed from the time of this separation until the death of the decedent, during which time the parties did not meet or correspond or in any way try to keep in touch with each other.

Decedent died possessed of an estate of more than ten thousand dollars, which he had disposed of by will, naming therein his brothers and sisters as legatees. The will was filed for probate on July 18, 1916, and letters testamentary were issued on August 9, 1916. It was on September 15, 1917, more than a year after decedent's death, before appellant learned of that fact. She at once instituted proceedings to establish herself as an heir at law of the decedent entitled to inherit one-half of his estate. On October 30, 1917, she filed a petition to set aside the probate of the will and made application for a monthly family allowance of $250. On November 17, 1917, she filed a petition under section 1664 of the Code of Civil Procedure, to determine heirship. On January 31, 1918, she filed an objection to the final account. The court ruled against the appellant on the petitions and the objection.

On the petition to determine heirship the court found in part as follows:

"2. That the petitioner, Lettie J. McClelland, and the deceased, David S. McClelland, were legally and lawfully married on the twenty-first day of August, 1906, and were during all the time since respectively wife and husband.

"3. . . .

"4. That a written agreement was made, executed and acknowledged by and between said Lettie J. McClelland and said David S. McClelland, on the twenty-first day of December, 1906, whereunder both parties thereto, and each of them, renounced any and all marital rights which each owed

to the other, of any kind or nature, whether legal, moral or equitable, and wherein each renounced, quit claimed and conveyed any right or title to any of the estate then owned or possessed by the other, or that might thereafter be acquired in any way by the other. That in said written agreement, it was further contracted, that no community property had been acquired since the said marriage. That on the said twenty-first day of December, 1906, the said parties separated and have never since seen one another, corresponded, or had any relations of any kind whatsoever.

"And, after hearing the evidence and arguments of counsel, the court makes and renders judgment as follows, to wit:

"It is ordered, adjudged and decreed by the court that David S. McClelland died testate on the eleventh day of June, 1916, leaving surviving as his only heirs at law the persons whose names and relationships to said decedent are as follows, to wit:

"Jemima McClelland, a sister; Mrs. Elizabeth Savage, a sister; Mrs. Ann Jane Warnock, a sister; William McClelland, a brother; Mrs. Maria McCreary, a sister; Crozier McClelland, a brother; Robert George McClelland, a brother, and Lettie J. McClelland, wife.

"That said decedent left a will which has been duly admitted to probate herein, and that by the terms of said will the whole of the said estate is devised and bequeathed as follows: . . .

"That the petitioner herein, Lettie J. McClelland, is not entitled to any part of said estate and her said petition is hereby denied."

The decree of distribution entered on February 28, 1918, contains the following:

"That at said hearing of said petition, Lettie J. McClelland, the widow of deceased, appeared with counsel in opposition to the petition herein for distribution. That testimony, oral and documentary, was received and the court finds that said Lettie J. McClelland and the deceased separated as wife and husband, and settled and adjusted all property rights between them by a contract in writing bearing date the twenty-first day of December, 1906, and that said Lettie J. McClelland, is not entitled to participate in the distribution of this estate."

The following statement appears in the "Minute Entry" made on April 16, 1918:

"Petition to determine heirship denied on the ground that property settlement disposed of the widow to inherit."

No other mention was made of this matter by the court in its findings, orders or decrees.

Appellant contends, however, that "there can be but very little doubt that the agreement of settlement was signed by the appellant under duress and undue influence. Practically the only point on which the case was decided by the trial court was the point of laches, and the trial court held that too much time had been allowed to escape before appellant did anything in the matter. Since this is the point on which the trial court decided the case, I will confine myself to a discussion of the question of laches." We are unable to understand the position of appellant in this matter for the record discloses no such finding as here attributed to the trial court. Indeed, such a finding would not have been responsive to any issue in the proceedings. [1] The petition to set aside the probate of the will, the petition to determine heirship, and the objection to the final account—the only proceedings taken by appellant in the matter—did not in any sense bring into issue the question of the validity of the agreement of settlement. [2] This point could have been raised only in a direct proceeding attacking the validity of the instrument. And although the court, in hearing the petitions, and the objection to the final account, admitted evidence to the effect that appellant had signed the settlement agreement under duress and undue influence, it is not to be deduced from the findings that the settlement agreement was obtained by duress or undue influence and that, as contended by appellant, "the trial court held that too much time had been allowed to escape, before the appellant did anything in the matter." So far as anything appears to the contrary the court may not have believed this testimony. [3] We think from the finding that the appellant was not entitled to any part of the estate the court must have reached the conclusion that the settlement agreement was valid—that it had not been obtained through duress or undue influence. Moreover, this conclusion finds direct support in the minute order entry: "Petition to determine heirship denied on the ground that property settlement disposed of the widow to inherit."

It is further contended by appellant "that while a party may, by undue delay, lose his right to attack an instrument he signed under duress or undue influence, he never loses his right to defend himself against the instrument if the other party chooses to enforce the terms of said instrument." In the absence of a specific finding that there was "duress or undue influence," this contention is without merit.

The decree is affirmed.

Shaw, J., and Olney, J., concurred.