[Civ. No. 22632. Second Dist., Div. Two. Jan. 17, 1958.]

Estate of GRAFTON C. POOLE, Deceased. BERNYCE WATSON, Appellant, v. OLIVE L. POOLE, Respondent.

Irvin C. Evans for Appellant.

Earl C. Broady for Respondent.

RICHARDS, J. pro tem.†—Appeal from a judgment denying the petition of appellant, Bernyce Watson, a surviving sister of the decedent, for the issuance of letters of administra-

†Assigned by Chairman of Judicial Council.

tion to her in the matter of the decedent's estate, ordering that letters of administration issue thereon to respondent, Olive L. Poole, the surviving wife of decedent, and decreeing that a certain separation and release agreement by the terms of which said surviving wife had purportedly released and relinquished all rights and claims of inheritance in and to her husband's estate be declared void and cancelled.

Appellant in her petition for letters of administration, in addition to setting forth facts purporting to establish the usual factual grounds for issuance of letters of administration, alleged in substance that the decedent's surviving wife had relinquished all rights of inheritance from the decedent and all rights in and to his properties and estate under a separation and release agreement executed by decedent and his said wife on January 19, 1956. A copy of said separation and release agreement was attached to and made a part of appellant's petition which, in essence, provided as follows: that the parties mutually agreed to separate and live apart; that the wife was to have and keep all household furniture and personal effects located in certain improved property on East 108th Street and a 1954 Studebaker Tudor Sedan; that the husband was to have and keep all household furniture and personal effects located at Seaside, California, and a 1954 Pontiac four-door station wagon; that the husband agreed to purchase from the wife, and the wife agreed to convey to the husband, all her right, title and interest in the East 108th Street real property for the sum of $2,000 to be paid in the form of a promissory note signed by the husband payable at $100 per month for 20 months from March 1, 1956, without interest; and, that the wife was given the right of possession of said real property and the right to any rental derived therefrom for six months from March 1, 1956, upon condition that she make payment during said period of the monthly payments of $83.56 per month due upon trust deed against said property.

Said separation and release agreement further provided in substance that the wife released and discharged the husband from all obligations of support and from any other claims, rights and duties arising out of the marital relationship; that each party was to have the right freely to sell or otherwise dispose of all of his or her own property by gift, deed or will; that each party was to be barred from any and all rights or claims by way of dower, courtesy, inheritance, descent or distribution from the other party; that each party

released and relinquished to the other all claims or rights of inheritance in and to all real property of the other party; and that each party agreed, upon the request of the other party, to execute all instruments necessary to enable the other party to dispose of all of his or her own real or personal property free from any apparent right or interest of the other party therein.

The surviving wife filed objections and amended objections to appellant's said petition for letters of administration, and also on her own behalf petitioned for letters of administration. In her said amended objections, the surviving wife alleged in substance that the purported separation and release agreement was invalid and void by reason of fraud and deceit on the part of her husband in misrepresenting to her the true nature, purpose and meaning of said agreement; that the husband falsely and fraudulently represented to her that said document only contained provisions saving each party from responsibility for the other party's bills and automobile accidents, and permitting each party to buy or sell real property without the knowledge or consent of the other party; that she was not permitted by her husband to read said agreement nor to secure independent advice in regard thereto before and at the time of the execution of said agreement; that she reposed great trust and confidence in the integrity and honesty of her husband and relied on his representations; and that, in reliance on his representations and at his instigation and insistence, she signed said purported agreement in ignorance of the true nature and meaning of said agreement and of her rights, and without independent advice. The surviving wife further alleged that the consideration for said agreement and for her release of her rights and expectancy in the properties of the parties was grossly inadequate and inequitable.

The trial court found that the allegations of the contesting wife's said amended objections were true and rendered judgment denying appellant's petition for letters of administration; granting the respondent-wife's petition for letters of administration, and decreeing that said separation and release agreement be declared void and cancelled.

Appellant as grounds for reversal urges: (1) That there is no preponderance of evidence to support the findings, conclusions and judgment; (2) That the contestant-wife's testimony is inherently improbable constituting self-contradiction and self-impeachment; (3) That the wife demanded and

obtained all the benefits under the agreement but rejected all obligations thereunder; and (4) That the trial court erred in not granting appellant's motion to dismiss the contest.

■ It is well established that, where a separation and release agreement is urged as barring a widow's right to administer the estate of her deceased husband and where it is alleged by the widow that the agreement is invalid for fraud, the superior court sitting in probate has the right and duty to adjudicate the issue of fraud; and that, if it be determined that the agreement was void for fraud, such an agreement cannot be interposed as an estoppel to the right of the widow to administer and to succeed to the estate of her deceased husband. (*Estate of Cover,* 188 Cal. 133, 138 [204 P. 583]; *Estate of McNutt,* 36 Cal.App.2d 542, 552 [98 P.2d 253].)

■ As to appellant's first contention that the findings lack evidentiary support "the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact." (*Primm* v. *Primm,* 46 Cal.2d 690, 693 [299 P.2d 231].) ■ The surviving wife's testimony, which was corroborated in part by the testimony of her mother, was substantially as follows: That she and the decedent were married in 1947; that he was a captain in the United States Army and was in military service during all of their married life; that, since 1949, she had been employed as a recreation director for the city of Los Angeles; that, during their marriage and out of earnings, they had acquired the furniture and bought the duplex on East 108th Street, taking title to said real property as joint tenants; that, while they had a personal dispute and had separated around Thanksgiving Day 1955, no divorce was contemplated or wanted by either of them; and that she had always had and reposed and continued to have and repose confidence and trust in her husband's honesty and fairness.

She further testified that, while her husband was stationed at Ford Ord, he had purchased certain real property at Seaside near Fort Ord as a residence for himself and a daughter by a prior marriage, and that, at his request, she had signed a quitclaim so that he could take title to said property in his own name as his separate property; that she was likewise considering buying certain real property at Los Angeles and taking title thereto in her own name as her separate property; that, upon learning in late 1955 or early 1956 that her husband was shortly to be transferred overseas to Germany,

she asked her husband whether she could so acquire said property in her own name as her separate property during his absence and whether she should not see a lawyer and have him draw up a quitclaim so that she could acquire said property as her separate property during her husband's absence; that her husband told her that it would not be necessary for her to see a lawyer, and that he would have the proper paper drawn up by the legal section at his army post so that she could so acquire said property as her separate property during his absence.

With particular reference to the events of January 19, 1956, the widow testified that her husband contacted her on the morning of said day and presented the purported separation and release agreement, stating that the document was just for the purpose of making it possible for her to buy property while he was overseas, to release him from any obligation if she had an accident with her car and to release each other from responsibility for the other's bills. She stated that she made inquiry of her husband as to whether she should not take the document to a lawyer to look over; but that he said that it would not be necessary, stating that the legal section at the army post had drawn the document, that it was all proper and just as it should be, and that there was no need to pay another lawyer. She also testified that she did not read the document because her husband told her when she started to read it that she would not understand it since it was all in legal terminology, and because he stated that he was in a great hurry to go to a notary public and to have the document signed. She testified that, in the past, she had signed documents at his request and had confidence in his honesty; and that, relying on his representation, they went to a notary public's office and signed the document. She further testified that, when she signed the document, she did not understand that she was waiving her rights in their property or her right to administer or to succeed to her husband's estate.

The surviving wife also testified that, following the signing of the document at the notary public's office, she received a copy thereof, but that she just put it away and did not read it or understand its significance until May 1956 when she presented it at an escrow office in connection with a purchase of other property which she was making at that time. She further testified that, when she first learned of the significance of the agreement in May 1956 she immediately

contacted her husband in Germany by telephone; but that she did not see a lawyer or take any action because her husband told her not to worry about the agreement as it would be taken care of when he came home from overseas. She further testified that her husband never asked her to execute a deed to him of her right, title and interest in and to the East 108th Street real property, and that he never gave her the promissory note for $2,000 mentioned in said agreement. Also that her husband had never made any $100 monthly payments on a promissory note; and that, after the execution of said document and up to her husband's death on August 19, 1956, the only amounts received by her had been five allotment checks for $100 each which she testified were wife's monthly allotments received directly from the government and not payments from her husband on a promissory note.

With respect to the alleged inadequacy of the consideration for the agreement and its inequity, the widow testified that the East 108th Street duplex had been purchased for $11,000, and that its value as of January 19, 1956, was approximately $15,000. She further testified that, at the time of purchase a down payment of $1,500 had been made out of savings of her husband and herself; that, out of rentals and earnings, substantial payments had been made on the trust deeds; and it was shown by other evidence that, as of January 1956 the balance owing on the trust deeds had been reduced to $7,596.33, leaving a current equity of approximately $7,400. As to the furniture, she testified in substance that the furniture assigned over to her under the terms of the purported agreement represented approximately one third of the community furniture having an estimated value of $1,000; that the furniture so purportedly assigned over to her husband represented approximately two thirds thereof, having an estimated value of $1,500; and that, as to the automobiles, the Pontiac purportedly assigned over to her husband had a greater value than the Studebaker Tudor sedan assigned to her.

We have set forth the surviving wife's testimony in considerable detail for the reason that such recital clearly shows that the trial court had before it abundant evidence to support its findings that the execution of said agreement was procured by and as a result of fraud on the part of the husband and substantial evidence to support its findings that the consideration for said agreement was grossly inadequate and inequitable.

As to appellant's contention that the surviving wife's testimony is inherently improbable and constitutes self-con-

tradiction and self-impeachment, it is sufficient to observe that the credibility of her testimony and the weight to be given to it were matters to be determined by the trial court. (*Muller* v. *Barnes,* 139 Cal.App.2d 847, 849 [294 P.2d 505]; *Hanna* v. *O'Connor,* 106 Cal.App.2d 760, 767 [236 P.2d 181].) Further, appellant has failed to point out, and we have not found, any substantial self-contradictory testimony nor inherent improbability in respondent's testimony.

There is likewise no merit in appellant's further contention that the wife demanded and received all the benefits under the agreement but rejected all obligations thereunder. The evidence clearly showed that the wife never demanded any benefits under the purported agreement nor recognized said purported agreement in any way; and that, on the contrary, her testimony makes it manifest that she had no knowledge that she was receiving any benefits pursuant to any agreement or that she was under any obligations by reason thereof. Further the evidence showed that her husband never asked her to execute the deed as to her interest in the East 108th Street property and that he never gave her his $2,000 promissory note therefor; and that any benefits which she received were only benefits which she had always previously received; such as allotment checks from the government while her husband was on overseas duty, right to collect rentals upon condition that she made the trust deed payments, use of furniture in her possession and use of automobile in her name and possession. The evidence clearly established in any event that any benefits which she may have received were accepted and received in continuing ignorance of the effect of the purported agreement upon her right to succeed to her husband's estate; and that accordingly the acceptance and retention of such benefits could not and did not estop her from asserting that the agreement was invalid for fraud. (*Estate of Cover, supra,* 188 Cal. 133, 146.)

Finally, appellant's motion made at the beginning of the trial for dismissal of the objections filed by the wife on the grounds that said wife was estopped from questioning the agreement, that she had no interest in the estate of the decedent, and that the issue of fraud was not properly before the trial court, was properly denied by the trial court. The essential allegations of the wife's said objections have hereinbefore been set forth at length; and it is clear that said allegations were entirely sufficient to state proper grounds for contest on the part of the wife within the rules enunciated

in *Estate of Cover, supra,* 188 Cal. 133 and *Estate of McNutt, supra,* 36 Cal.App.2d 542. Appellant relies on *In re Garcelon,* 104 Cal. 570 [38 P. 414, 43 Am.St.Rep. 134, 32 L.R.A. 595]; *Estate of Edelman,* 148 Cal. 233 [82 P.2d 962, 113 Am.St. Rep. 231], and *Estate of McClelland,* 181 Cal. 227 [183 P. 798] in support of her contention that the contest should have been dismissed upon her motion. An examination of these authorities reveals that in none of them was the issue of the validity of the settlement agreement raised which is the very crux of the matter at bar.

Judgment affirmed.

Fox, Acting P. J., and Ashburn, J., concurred.